## White *against* The Commonwealth.

### IN ERROR.

1813.
Chambersburg,
Saturday,
October 9.

ERROR to the Oyer and Terminer of *Cumberland* county, to bring up the record of an indictment and judgment for murder.

The indictment charged, that *Edward White*, "not having "the fear of God before his eyes &c., on the 23d of *July* "1812, with force and arms, at &c., in and upon one *Samuel* "*Sampson*, in the peace of God &c. then and there being, "feloniously, wilfully, and of his malice aforethought, did "make an assault; and that the said *Edward White*, with a "certain stone of no value, which he the said *Edward White* "in his right hand then and there had and held, in and upon "the right side of the head, near the right temple of him "the said *Samuel Sampson*, then and there feloniously, wil- "fully, and of his malice aforethought did cast and throw; "and that he the said *Edward White with* the stone aforesaid, "so as aforesaid cast and thrown, the aforesaid *Samuel* "*Sampson*, in and upon the right side of the head, near the "right temple of him the said *Samuel Sampson*, then and "there feloniously, wilfully and of his malice aforethought, "did strike, penetrate and wound, giving to the said *Samuel* "*Sampson*, by the casting and throwing of the stone afore- "said, in and upon the right side of the head, &c. one mor- "tal wound of the length of two inches, and of the depth of "one inch, of which said mortal wound, the said *Samuel* "*Sampson* then and there instantly died; and so the jurors "aforesaid, upon their oaths &c. say that the said *Samuel* "*White*, him the said *Samuel Sampson*, in manner and form "aforesaid, feloniously wilfully and of his malice afore- "thought, did kill and murder, against the peace and dignity "of the Commonwealth of *Pennsylvania*."

An indictment charging that the defendant *with* a certain stone which he held, in and upon the right side of the head of the deceased, feloniously, &c. *did cast and throw,* and that the defendant *with* the stone aforesaid, the deceased in and upon the right side of the head feloniously &c. *did strike,* sufficiently charges that the defendant *threw* the stone and *struck* the deceased.

In an indictment for murder, it is not necessary so to describe the offence, as to shew whether it be murder of the first or second degree. Nor is it necessary that the indictment should conclude against the form of the act of assembly.

Process must go in the name of "the Commonwealth of *Pennsylvania;*" but it is immaterial in what part of the precept the Commonwealth is introduced, so that the command is given in its name.

Precepts for Courts of Oyer and Terminer may issue under the private seals of the judges appointing such Courts: No seals are required for the Courts themselves.

In a precept to the sheriff to summon the grand and petit jury, it is sufficient to command him to cause to come before the judges 24 *good and lawful men,* without commanding him in what manner they are to be drawn or selected.

A precept to the sheriff, commanding him to cause to come &c. "24 *good and lawful men* of the "body of the county of *C.* aforesaid, then and there to enquire, present, do and perform such "things as on behalf of the Commonwealth shall be enjoined them, *and also* a competent number "of *sober and judicious persons,* and none other, as jurors for the trial of all issues &c.," contains no command to convene the petit jurors from the body of the county of *C.* And therefore if it does not appear by the return or the panel, that the petit jurors in fact came from the body of the county, the error is fatal.

1813.

WHITE
*v.*
COMMON-
WEALTH.

The precept to the sheriff began, " *Cumberland* county " *ss.* I *James Hamilton*, President of the several Courts " of Common Pleas in the ninth district, consisting of &c. " and by virtue of my office, of the Court of Oyer and Ter- " miner and general gaol delivery for the trial of capital and " other offenders therein, and *John Creigh* and *James Arm-* " *strong*, esquires, associate judges of the same Court, in " the said county of *Cumberland*, to the sheriff of *Cumberland* " county, greeting: *In the name and by the authority of the* " *Commonwealth of Pennsylvania*, you are hereby command- " ed, that you cause to come before the president and asso- " ciate judges of the same Court in the county of *Cumber-* " *land*, or any two of them, the president being one, on the " &c. at &c. in &c. 24 *good and lawful men of the body of the* " *county of Cumberland* aforesaid, then and there to enquire, " present, do and perform such things as on behalf of the " Commonwealth shall be enjoined them, *and also* a compe- " tent number of *sober and judicious persons*, and none other, " as jurors for the trial of all issues, at a Court of Oyer and " Terminer and general goal delivery, which number shall " not be less than 48, nor more than 60: And also that you " make known to all justices &c. of the said county, that " they be then and there with their records &c. &c., and " that you yourself and your ministers, be then and there in " your and their proper persons, to do those things &c., and " have you then and there this writ, together with a panel " thereunto annexed, containing the christian and surnames " and places of abode of those jurors. Given under *our* " *hands and seals*, at *Carlisle*, the 7th of *December* 1812."

The sheriff at the day returned his writ with a panel an- nexed, containing the names &c. of the jurors, and the townships where they lived, but in no place mentioning the county.

The defendant being found guilty of murder in the first degree, various objections were taken to the indictment and process, by his counsel, which being overruled by the Court below, and sentence of death having been passed, this writ of error was with the consent of the attorney general issued.

*Watts* and *Duncan* for the plaintiff in error, took the fol- lowing exceptions to the record.

1. That the process to summon the grand and petit jurors, was unconstitutional, because it was in the name of the judges, and not of the Commonwealth.

2. That the process was under the private seals of the judges, whereas it should have been under the seal of the Court.

3. That the sheriff was not commanded to have the jury drawn according to law.

4. That the sheriff was not commanded to cause *good and lawful* men of his *bailiwick* to be summoned as petit jurors, but merely sober and judicious persons; and it did not appear by the record that they were taken from his bailiwick.

5. That the indictment was absurd, as it charged the offence to consist in throwing *with* a stone, &c. and did not lay the charge of *striking*, positively and certainly: and that it was defective, in not concluding against the form of the act of assembly.

Carothers for the Commonwealth.

Tilghman C. J. *Edward White* has been convicted of murder in the first degree, and judgment of death passed against him by the Court of Oyer and Terminer for the county of *Cumberland*. By permission of the attorney general, the record has been removed to this Court, and several errors have been assigned, on which we are now to deliver our opinion. The exceptions which have been taken, go both to the indictment and the process. To the indictment it is objected, first that the offence is not charged with sufficient certainty, and next that it does not conclude against the form of the act of assembly.

1. It is said in the indictment, that *Edward White, with* a certain stone which he held in his right hand, in and upon the right side of the head, near the right temple of *Samuel Sampson*, feloniously, &c. did cast and throw; and that the said *Edward White, with* the stone aforesaid, so as aforesaid cast and thrown, the aforesaid *Samuel Sampson* in and upon the right side of the head near the right temple of him the said *Samuel Sampson*, feloniously &c. did strike &c. The objection is, that it is not said in the first instance, that *White* threw the stone at all, but only that he threw *with* the stone; and that the subsequent averment that he struck

*Sampson* with the stone, *so as aforesaid cast and thrown,* does not amount to a positive assertion, because it refers to the casting and throwing *as aforesaid,* when in fact it had not been said before that he did cast and throw it. The action of *White* is not as well described as it might have been; but upon the whole it is sufficiently alleged, that he threw the stone and struck *Sampson* with it. Casting and throwing *with* a stone, cannot be understood as using a stone for the instrument of throwing; it was the object thrown, and the cast or throw was made upon the right side of the head of *Sampson.* This to be sure is an awkward kind of expression, and not very good grammar; but in the words which follow it is positively asserted, that *White* struck the deceased with the stone cast as aforesaid. Taking it altogether then, it sufficiently appears that *White* threw a stone, with which he struck *Sampson,* and thus killed him.

2. Where a statute *creates* an offence, the indictment must charge it as being done against the form of the statute. But where the statute only inflicts a penalty upon that which was an offence before, it need not be laid to be against the form of the statute, because in truth the offence does not violate the statute. That this is the rule, was decided in the case of the *Commonwealth* v. *Searle,* 2 *Binney* 339. The only question then will be, was murder of the first degree an offence *created* by act of assembly. This depends on the second section of the act " for the better preventing of " crimes &c." passed 22d of *April* 1794. After reciting that the several offences which are included in the general denomination of *murder,* differ so greatly in degree of atrociousness, that it is unjust to involve them in the same punishment, it is enacted, that all murder which shall be perpetrated by means of poison, &c. &c. shall be deemed murder of the first degree, and all other kinds of murder shall be deemed murder of the second degree, and the jury before whom any person indicted for murder shall be tried, shall, if they find such person guilty, ascertain in their verdict whether it be murder in the first or second degree; but' if such person shall be convicted by *confession,* the Court shall proceed by examination of witnesses, to determine the degree of the crime, and to give sentence accordingly.

Now this act does not define the crime of murder, but

refers to it as a known offence; nor so far as concerns murder in the first degree, does it alter the punishment, which was always death. All that it does, is to define the different kinds of murder, which shall be ranked in different classes, and be subject to different punishments. It has not been the practice since the passing of this law, to alter the form of indictments for murder in any respect; and it plainly appears by the act itself, that it was not supposed any alteration would be made. It seems taken for granted, that it would not always appear on the face of the indictment of what degree the murder was, because *the jury are to ascertain the degree,* by their verdict, or in case of confession, *the Court are to ascertain it* by examination of witnesses. But if the indictments were so drawn as plainly to shew that the murder was of the first or second degree, all that the jury need do, would be to find the prisoner *guilty* in manner and form as he stands indicted. In the case of the *Commonwealth* v. *Joyce* and *Mathias,* (*Oyer and Terminer, Philadelphia, February* 1808, *before C. J. Tilghman and Judge Smith*) who were convicted of the murder of *Sarah Cross,* it was moved in arrest of judgment, because the indictment did not charge the murder to have been committed by a *wilful, deliberate, and premeditated killing,* as expressed in the act of assembly. But the motion was overruled, and the murderers executed. I am therefore of opinion that the indictment is good.

The exceptions to the process remain to be considered. The precept to the sheriff is in the names of the president of the district, and two of the associate judges of the Court of Common Pleas, under their hands and seals. The style is, "the judges to the sheriff greeting: In the name and by "the authority of the Commonwealth of *Pennsylvania,* you "are hereby commanded &c." It is objected 1. That the style should have been "the Commonwealth to the sheriff "greeting." 2. That the precept should have been issued under the seal of the Court of Oyer and Terminer. 3. That the sheriff should have been commanded to have the jurors selected and drawn in the manner directed by law. 4. That the sheriff is not commanded to return petit jurors of the county of *Cumberland,* nor does it appear on the record that they were of that county. These objections shall be considered in their order.

1813.

WHITE
v.
COMMON-
WEALTH.

1. It is declared by the present constitution of *Pennsyl-vania*, art. 5. sec. 12, that "the style of all process shall "be, the Commonwealth of *Pennsylvania;*" and this provision is copied from the twenty-seventh section of the frame of government of 1776. The expression of the *style* being in a certain way, does not convey a precise idea. It is said by the counsel for the prisoner, that the process shall *begin* with these words, and in general, process issuing from Courts of record does begin so; and yet the substantial intent of the constitution would seem to be satisfied, if the command is given in the name and by the authority of the Commonwealth, in whatever part of the precept that command is expressed. In the same section of the constitution, where it is intended to direct the *place* in which particular expressions shall stand, it is clearly pointed out, "all prosecutions shall "*conclude* against the peace and dignity of the Common-"wealth." It is now thirty-seven years since the formation of the constitution of 1776, and during all that time the precepts for Courts of Oyer and Terminer have been in the same form as this. Courts of Oyer and Terminer were held soon after the making of that constitution, so that the construction first put upon it was contemporaneous with the constitution itself, and no doubt adopted by some of those who were framers of it. A construction thus commenced and thus continued is entitled to the highest respect. The imperfection of language causes much uncertainty in writings which have been drawn up with the greatest deliberation. It is of great importance that the construction should be fixed as soon as possible, and when once fixed, it should be adhered to, unless palpably wrong, and productive of inconvenience. It is of no consequence in what part of the process the Commonwealth is introduced, so that the command is given in its name. This is done in the precept under consideration, and as it is agreeable to constant usage, I am of opinion that it is sufficient.

2. Much of what has been said will apply to the second exception. The usual form has been under the seals of the judges. Precepts that issue or are supposed to issue from a Court of record during its session, are under the seal of the Court. But this is not the case with precepts for a Court of Oyer and Terminer. Emergencies may arise, requiring such

Courts to be held on a sudden. There are no particular periods appointed by law for the holding of them. The judges may appoint them at their pleasure, and this appointment need not be made during the sitting of any Court. As for a seal, there is no occasion for a particular one for these Courts. The judges of the Supreme Court have no seal for the Courts of Oyer and Terminer held by them; and this is the case in many instances with the judges of the Common Pleas. There is no weight therefore in this objection.

3. The command to the sheriff is, that on a certain day he cause to come before the judges twenty-four good and lawful men &c. This is the *accustomed* and the *best* form. Entering into details is dangerous, because something may be omitted, and it is unnecessary, because the sheriff must be supposed to know his duty, and is bound to perform it. If he neglects any part of it, those whom it concerns may set the process aside.

4. The fourth and last exception is that it does not appear that the petit jury came from the body of the county, and if well founded it is fatal. The command to the sheriff is that he cause to come &c. "twenty-four good and lawful "men of the body of the county of *Cumberland* afore- "said, then and there to enquire, present, do and perform "such things as on behalf of the Commonwealth shall be "enjoined them, *and also a competent number of sober and* "*judicious persons, and none other, as jurors for the trial of* "*all issues &c.*" Why the words *good and lawful men*, applied to the grand jurors, are dropped, and sober and judicious persons put in their place as to petit jurors, I know not. The act of 29th of *March* 1805, does indeed direct that jurors shall be *sober and judicious persons;* but the words *good and lawful men* comprehend that and every other requisite. I do not think however that this change of phrase is material; but are the words "*of the county of Cumberland*", which follow "*good and lawful men*", connected by the copulatives *and also*, with the words next succeeding "*a com-* "*petent number of sober and judicious persons &c.?*" The descriptions of the two sets of jurors, are each complete and independent of the other; and the use of the copulative expressions is only to shew that the sheriff is commanded to cause to come &c. both one jury and the other. How this

**1813.**

WHITE
*v.*
COMMON-
WEALTH.

form crept in among us, I am at a loss to imagine. I have examined the printed entries of criminal proceedings, and find them quite different. They particularly mention that each jury is to come from the body of the county. The return of the sheriff makes no mention of the county; he endorsed on the precept, " jury summoned as within commanded, as per " list annexed." Annexed is a list of the jurors mentioning the townships in which they reside, but nothing is said of the county. One of the townships is *Allen.* I know that there are townships of that name in several counties, and it may be so with others. If I were allowed to conjecture, I should have no doubt but that the whole jury was of *Cumberland* county; and were it a *civil* proceeding, I would try hard to get over the objection. *But where life is at stake, I dare not endeavour to be ingenious.* Having attentively considered the precept, it appears to me, that without torturing it we cannot understand that the petit jury were to be of the county of *Cumberland.* I am therefore of opinion that the judgment was erroneous, and should be reversed.

YEATES J. I feel myself under the painful necessity of dissenting from the opinion delivered, in one point.

Amongst the errors assigned to reverse the judgment upon the conviction on this indictment, none of them strike my mind with difficulty, except that which arises from the form of the precept to summon the juries. I do not conceive it to be necessary that it should be under a public seal. I know of no law which provides for a seal of the Court of Oyer and Terminer. The Judges of this Court, by virtue of their offices, are justices of Oyer and Terminer and general gaol delivery in the several counties; and yet previous to the *American* revolution, as well as under the former constitution of 1776, and the present one of 1790, such precepts have issued under the hands and seals of the individual justices of the Court, and many convictions have taken place under them.

But it is objected, that by section *twelve* of article *five* of the present constitution, it is provided, " that the style of all " process shall be, the Commonwealth of *Pennsylvania;* and " all prosecutions shall be carried on in the name and by " the authority of the Commonwealth, and conclude against " the peace and dignity of the same."

It is true, the precept here commences in the name of the president of the district, and two of the associate judges of the court; but it is directed to the sheriff, and *in the name and by the authority of the Commonwealth of Pennsylvania* expressly he was *commanded &c.* This appears rather a verbal criticism than a substantial objection, and it weighs much with me that it pursues the form used in this Court until within these few years, under the constitution of 1790.

The greater difficulty remains to be got over. The sheriff was commanded that " he should cause to come &c." The objection is that though the sheriff is directed to summon the grand jurors of the body of the county of *Cumberland*, yet that direction does not extend to the traverse jurors. I think the words " good and lawful men of the body and " county of *Cumberland*" by fair construction may refer to the persons who are to be summoned and returned as jurors for the trial of all issues. The directions as to the two sets of jurors are connected together by the conjunctions *and also*, which refer to the body of the county from whence the sheriff is to cause those jurors to come. The sheriff has summoned them accordingly, and has obeyed the injunction of the writ by annexing a panel thereto in his return, containing the christian and surnames, additions and places of abode of the jurors. I feel every tenderness for unfortunate prisoners, that they should be subjected to no difficulties which the law does not permit; but I do not feel myself justified in pronouncing that there is a fatal error in this *venire facias*, which renders the judgment illegal. The exact correspondence of the precept which issued in the present instance, to other precepts issued by the Courts of Oyer and Terminer and general gaol delivery of this district, operates strongly on my mind, that I should not declare this *venire facias* to be illegal, unless upon the most solid and substantial grounds. I am strongly inclined to think that this *venire facias* for the court of Oyer and Terminer, has pursued the form used by the judges of this court sitting at Oyer and Terminer; but having no access here to those records, I would not be understood to express a confident sentiment thereon.*

I consider the indictment as inartificially drawn, but not

---

* On my coming to *Philadelphia*, and searching the prothonotary's office of the Supreme Court, I find I have been mistaken herein.

*1813.*

WHITE
*v.*
COMMON-
WEALTH.

as radically defective. It states the felonious, wilful and malicious assault of the prisoner upon *Sampson*, and that *with* a certain stone which he then and there in his right hand had and held, in and upon the right side of the head near the right temple of the said *Sampson*, then and there feloniously wilfully and of his malice aforethought did cast and throw; and that the prisoner with the stone aforesaid, so as aforesaid cast and thrown, the aforesaid *Sampson*, in and upon the right side of the head near the right temple of him the said *Sampson*, then and there feloniously wilfully and of his malice aforethought did strike penetrate and wound, giving to the said *Sampson* by the casting and throwing of the stone aforesaid, in and upon the right side of the head near the right temple of the said *Sampson*, one mortal wound of the length of &c., of which said mortal wound the said *Sampson* then and there instantly died. So that the charge is laid positively, and not by way of recital, and that the party died of the wound occasioned by the prisoner's casting and throw-ing of the stone; and the throwing of the stone, though in-elegantly expressed, is couched in words of sufficient cer-tainty.

It has been further assigned for error, that the offence of murder of the first degree was created by the act " for the " better preventing of crimes, and for abolishing the punish-" ment of death in certain cases," passed on the 22d *April* 1794, (3 *Smith's Laws* 187); and therefore the crime should have been laid in the words of the act to have been done *wilfully, deliberately and premeditatedly*, and the indictment is defective in not concluding against the form of the act of assembly. But it is clear that this law creates no new offence as to wilful and deliberate murder, nor annexes any new punishment thereto. Different degrees of guilt exist under the general crime of murder, which is therefore arranged under two classes of murder of the first and second degree. The uniform practice since the act was passed, has been to lay the offence as at common law; which has been decided by the judges of this court sitting at Oyer and Terminer to be sufficient, in the case of the two negroes who were exe-cuted a few years ago for the murder of an ancient woman in the city of *Philadelphia*. The true distinction on this sub-ject is drawn in *Respublica* v. *Searle*, 2 *Binney* 339.

Upon the whole, imperious duty constrains me to declare, that there does not appear to me such error on this record, as would justify me in reversing the judgment rendered against the prisoner. I entirely assent to the opinion, that too great nicety in proceedings is a reproach to the criminal law of any civilized country.

BRACKENRIDGE J. I concur with the Chief Justice in the fullest manner.

Judgment reversed.