Raney, J.,
dissenting. After the most careful investigation I am entirely satisfied the verdict of the jury was sufficient to *96 warrant the judgment pronounced upon it. Differing in this from a majority of the court, 1 shall proceed to state briefly the considerations which have led my mind to this conclusion.
The plaintiff in error stood charged in all the counts of the indictment with the crime of murder in the first degree. He was charged with having taken the life of Catharine Young “ unlawfully, willfully, feloniously, purposely, and of deliberate and premeditated malice.” To this accusation the jurj>- have responded that he “ is guilty in manner and form as he stands charged in the indictment.”
So says the record, and no one doubts that it imports absolute 96] verity. I am aware of no rule of construction applicable *to a verdict for ascertaining the intention of the jury that does not equally apply to every other part of the proceedings in the cause; or, indeed, to any other instrument of writing where the same degree of certainty is required. If there is none it seems to me evident, upon general principles, that this verdict is a clear, distinct, and unequivocal affirmation of the truth of every material allegation contained in the indictment. Just as clear and distinct as it would be if it contained a recital of them all, with a statement that each and all of them were found to be true. And all of them being found true, the crime could be nothing else than murder in the first degree, and the court would be fully authorized in .awarding the penalty, prescribed by law, to be visited upon those guilty of it.
Does the 39th section of the crimes act (Swan’s Rev. Stat. 275) require more than this to be done ? It provides “ that in trials for murder, the jury before whom such trial is had, if they find the prisoner guilty thereof, shall ascertain in their verdict whether it be murder in the first or second degree, or manslaughter, and if such prisoner be convicted by confession in open court, the court shall proceed, by examination of witnesses in open court, to determine the degree of the crime, and pronounce sentence accordingly.” '
The object of the general assembly in enacting this section is very easy to be seen and comprehended. It was intended to require the jury, in every case of felonious homicide, to go beyond the fact of killing, and from-the facts and circumstance in evidence to determine the degree of atrocity with which it was done, and to which of the three sections of the statute, punishing homi *97 cide with different degrees of severity, the case of the accused properly belongs. It is at once conceded that it must distinctly and clearly appear from the verdict that the jury has performed this important duty, upon which the life of the prisoner may depend, before the court is authorized to give judgment upon it; or, indeed, intelligently can award the punishment due to the crime. A faithful adherence to the spirit of this enactment is absolutely ^necessary to give practical effect to the humane policy of our [97 legislation in proportioning the penalty to the nature of the offense, instead of the undistinguished severity which followed conviction of murder at common law; and I am very far from intending to undervalue its importance, or to weaken its force in the least. But with this concession constantly in view, it is unquestionably true, that no prescribed form of expression is required to be used by the jury in communicating their finding to the court. It is enough, if, from the language used, it appears, without doubt or ambiguity, either from the facts found, or by a specific designation of the degree of crime, that the jury have discharged this part of their duty, and have intended to communicate the result of their deliberations upon the evidence.
When this is done, in either form, the degree of guilt is ascertained — made certain — in the verdict, and the court judicially knows what judgment to give, and what punishment ensues.
I have already stated, as my opinion, that this verdict does find and affirm the truth, with precision and certainty, of every material averment contained in the” indictment; and as the facts there charged, undeniably constitute murder in the first degree, I think the jury have sufficiently ascertained the plaintiff in error to be guilty of that crime.
But it is said the indictment also charged him with murder in the second degree and manslaughter — that he might have been found guilty of either of those crimes upon the trial; and it is hence inferred, that finding him guilty as he stands charged, still leaves it uncertain which of the crimes included in the indictment the jury intended to affirm he had committed. That he might have been found guilty of either of the lesser crimes, under this indictment, there is no doubt, but quite as little, I submit, that neither of them is the crime charged upon him in the indictment. That crime is murder in the first degree, and to commit it, except in the attempt to commit certain other crimes, or by administering poison, requires *98, 99 98 not only an unlawful killing, but a killing purposely, *and of deliberate and premeditated malice. If deliberation and premeditation are wanting, the charge as made is not proved, but if the balance of the averments are proved, he is guilty, not of the crime with which he stands charged, but of a lesser crime included within it, and exactly covered by such averments. The crime charged consists of a specific number of indispensable elements, forming one indivisible whole. Without them all, it does not exist; and with them all, charged in the indictment, and found to be true “ in manner and form as charged,” I am wholly unable to see why they are not all as effectually made part of the verdict, by this reference to the indictment, as though they were all copied into it, and the truth of each distinctly affirmed: or how any one of them can be said to lack verification more than another — how the fact of killing can, with more propriety or certainty, be said to be found, than the equally indispensable fact, that it was done with deliberate and premeditated malice.
Yiewing the verdict in the light I have presented, I should have deemed it a fair compliance with the requisitions of the statute, unaided by any judicial construction heretofore placed upon it. But a glance at the history and origin of this legislation very much confirms me in the views I have expressed. Murder was first separated into degrees, in this state, upon the revision of the crimes act in 1815 (2 Chase Stat. 856), and at the same time the section under consideration was first introduced. Prior to that time, all murder was punished with death, and the several statutes defining "it substantially adopted the common-law definition of the crime.
The provisions of our act of 1815, which have been almost literally re-enacted ever since, were very plainly borrowed from the Pennsylvania’ statute of 1794, as will be seen by comparison of the two. That statute recites, “ That whereas the several offenses which are included under the general denomination of murder, differ so greatly in the degree of atrociousness, that it is unjust to involve them in the same punishment,” etc. It thus enacts: “ That murders 99] which shall be ^perpetrated by means of poison, or by lying in wait, or by any other kind of deliberate, willful and premeditated killing; or which shall be committed in the perpetration, or attempt to perpetrate any arson, rape, robbery, or burglary, shall be deemed murder in the first degree, and all other kinds of murder, shall be deemed murder of the second degree; and the jury before whom *100 ' any person indicted for murder shall be tried, shall, if they find such person guilty, ascertain in their verdict, whether it be murder in the first or second degree ; but if such person shall be convicted by confession, the court shall proceed by examination of witnesses to determine the degree of crime, and to give sentence accordingly.” United States Criminal Law, by Lewis, 1848, p. 351.
This statute treats murder as a known and definite offense; it does not attempt to define it as a substantive offense created by this statute, but to separate its degrees of guilt.
The crime is still regarded as existing at common law, and indictments are usually framed according to the common-law forms, which necessarily cover both degrees, and they have been uniformly sustained by the courts of that state.
In this respect their statute differs from ours, which creates and defines the offense, and in accordance with settled rules, requires the indictment to follow the language of the statute. This difference shows a greater necessity for the provision requiring the degree of guilt to be ascertained by the verdict in that state than-this, since it would not otherwise ordinarily appear; but still, as the provisions are the same, they should undoubtedly receive the sanie.construction. The Pennsylvania statute came under review and was first construed by the Supreme Court of that state, in the case of White v. The Commonwealth, 6 Binn. 182. C. J. TilgGinan. says : “ This act does not define the crime of murder, but refers to. _ it as a known offense, nor so far as it concerns ‘murder in the first degree, does it alter the punishment, which was always death; all that it does is to define the different degrees of murder, which shall be ranked in different ^classes, and be subject to different [100 punishments. It has not been the practice since the passing of this law, to alter the form of the indictments for murder in any respect; and it plainly ajjpears by the act itself tlmt it was not supposed any alteration would be made. It seems taken for granted, that it would not- always appear on the face of the indictment of what degree the murder was, because the jury are to ascertain the degree by their verdict, or in a case of confession, the court are to ascertain it' by examination of witnesses. But if the indictments were so drawn, as plainly to show that the murder was of the first or second degree, all that'thejury need do, would be to find the prisoner guilty in manner and form as he stands indicted.’'
This construction has been since uniformly followed, as may be *101 seen from the cases of Comm. v. Earl, 1 Whart. 525; Comm. v. Miller, Lewis Crim. Law, 401.
The case of White v. The Commonwealth was decided in 1813. Two years afterward, the general assembly of this state incorporated the statute substantially into our criminal code. Now, aside from the respect due to the opinion of so learned a court, it is not fair to assume that, when we adopted it, it was intended to mean here just what it had been authoritatively settled to mean in the code from which it was taken ? I think it is ; and when it is remembered that a large portion of the members of our legislative bodies, at that day, were natives of the State of Pennsylvania, and well acquainted with her legislation and judicial decisions, I think it may be regarded as a legislative sanction of the correctness of the construction it had there received.
I am, therefore, of opinion, both upon principle and authority, there is no error in the record, and the judgment should be affirmed.