J. R. Swan and Brinkerhoff, JJ.,
dissenting.
It is undoubtedly a general rule, and upon which it was hardly necessary to comment, that in an indictment, all the material facts and circumstances comprised in the definition of the offense, whether by a rule of the common law or by statute, must be stated; and that if any one material fact or circumstance be omitted the indictment will be bad. There is no question made in this case about the rule; we all agree as to it, but we differ as to its application.
The case of Johnson v. Commonwealth, 24 Penn. Rep. (12 Harris) 387, is cited as bearing on this question. It will be found, on examination however, we think, to have no *125 relation to it. In Pennsylvania, as in this state, a statute prescribes what shall be deemed murder in the first and in the second degree. It provides: “All murder which shall be perpetrated by means of poison or tying in wait, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration, or attempt to perpetrate any arson, rape, robbery, or burglary, shall be deemed murder in the first degree, and all other kinds of murder shall be deemed murder in the second degree; and the jury before whom any person shall be indicted for murder shall be tried, shall, if they find such person guilty thereof, ascertain in their verdict whether it be murder in the first or second degree.” "Whar. Am. Cr. Law, 3d ed., 421.
In Pennsylvania, under this statute, indictments are not framed so as to show whether the prisoner has been guilty of murder in the first or second degree, but the indictment is framed precisely as at common law; and the jury, in their verdict, find whether the prisoner was guilty of murder in the first or the second degree; the courts deciding that this act was not intended to change the form, as at common law, of indictments for murder. White v. Commonwealth, 6 Binn. 179; Whar. Prec. 151, 118. Now, in the case of Johnson v. Commonwealth, 24 Penn. 387, the prisoner had been indicted as at common law, and the jury, instead of finding whether the prisoner was guilty of murder in the first or second degree, found the prisoner “guilty in manner and form as he stands indicted.” He did not stand indicted for deliberate and premeditated killing, and the effect of the verdict was to find the prisoner guilty of murder in the second degree. Ve cannot perceive the application of this case to the one before us. If it be cited to show that a common law indictment for murder is not good in this state; or that there must be a purpose to kill averred in indictments for murder under our statute, it was hardly necessary to cite it, as no one we believe ever disputed it.
*126 The indictment in this case states particularly, and in detail, the acts of the prisoner which caused the death; it avei’S that these acts were done purposely, and of deliberate and premeditated malice; that instant death ensued; it then avers, “and so” the jury find and say that, by the means and in the manner above specifically stated, the prisoner did purposely and of his deliberate and premeditated malice, kill and murder the deceased.
The majority of the court think that there is an omission of an allegation in the indictment of a purpose to kill. We differ from them in this respect. The majority of the court concede that the indictment contains an allegation of a purpose to kill; but they think the allegation is not positive, but a mere recital, as if it were under a whereas, or a mere conclusion of law and not a description of the offense. We differ from them in this respect, also, and while it is conceded that in the last or concluding part of the indictment, the “manner and the means” of committing the murder are referred to as antecedents and causes, there is a positive allegation that the prisoner did purposely kill the deceased.
There is nothing occult or artificial in the words “ and so.” It is good plain Saxon, having no technical meaning. It refers to no law, but to the facts previously stated, and the particular fact that the prisoner gave the deceased a fatal blow pui'posely, and of his deliberate and premeditated malice, of which the deceased instantly died — “ and so” the jurors say the prisoner “ did purposely, and of his deliberate and premeditated malice, in the manner and by the means aforesaid, kill and murder the deceased.” Could human language be more simple, clear, and intelligible to the prisoner and the court, in charging the defendant with a purpose to kill ?
It will be observed that the word “murdravit,” “he murdered,” no where appears in an indictment at common law for murder but in the last or concluding clause under consideration. It is, notwithstanding, a settled rule of the com *127 mon law, that an indictment for murder is bad, unless it be averred in the body of the indictment that the prisoner did “murder” the deceased. Hence, in a common law indictment, after stating the manner and circumstance of the killing, it is averred, “and so the grand jury aforesaid, on their oaths aforesaid, do say that the said A. B., him the said C. D., in the manner and by the means aforesaid, feloniously, willfully, and of his malice aforethought,, did kill and murder.”
Of this averment, it is said by Hawkins, Book 2, Ch. 25, sec. 55 : “ In what manner the body of an indictment at common law ought to set forth the substance and manner of the fact in relation to the offense of the principal, I shall observe first, that no pariphrasis or circumlocution whatsoever will supply those words of art which the law hath appropriated for the description of the offense, as murdravit in an indictment for murder.”
Now, if by way of quod cum, or whereas, or recital, or mere conclusion of law, and not descriptive of the offense, it were alleged in an indictment that the prisoner murdered the deceased, it would be bad at common law, because the allegation is material, and should, therefore, be directly or positively averred; and yet it never seems to have been made a ground of objection to an indictment at common law that the description of the offense was imperfect and the indictment bad, because the allegation that the prisoner did kill and murder the deceased, was omitted in every other part of the indictment except where preceded by, and connected with, the words, “ and so the jurors,” etc., “ do find and say,” etc.
This, it seems to us, is unanswerable, and shows that the concluding clause is deemed a positive allegation descriptive of the offense.
The authority referred to by the Chief Justice, 1 Russ, on Cr. 563, shows that this last or concluding part of the indictment is a positive allegation.
Russell says: “ The indictment is concluded by charg *128 ing the murder upon the party by way of consequence from the antecedent matter, in a positive allegation that the prisoner in manner and by the means aforesaid,, feloniously, willfully, and of his malice aforethought, did (poison) Mil and murder.”
The authority cited, 2 Hawk. Ch. 25, sec. 60, shows that the positive allegation at the concluding part of an indictment, that the prisoner did feloniously murder the deceased, ilfelonice murdravit,”etc., cannot amount to an indictment for murder without the words, “ of malice aforethought,” although by the word murder, it expressly charges the party with murder, and it is impossible that there could be a murder and no malice aforethought. "We do not perceive any thing in this citation applicable- to the question here. It is only a repetition of what is said in Hale’s P. C. 187: “ Though murdravit be in the indictment, yet if it wants the words ex malitia sica praecogitata, the party shall have his clergy.”
But if, by the English common law, the allegation “ murdravit ” were not material, or, being material, was required to be alleged in some other than the concluding clause; or that the concluding clause was not to a positive allegation, the precedents of indictments for murder under our statute have been so long settled and established in this state, as not to be overthrown by English rules or precedents, even if those rules and precedents conflicted with those adopted in Ohio.
The statute defining the degrees of murder was enacted in 1810, and ever since has been in force.
It is a fact altogether beyond question, or dispute, that from that time to this, the Ohio form of an indictment for murder has been made up by inserting in the common law form the words “ purposely and of deliberate and premeditated malice ” wherever the words “ feloniously, willfully, and of his malice aforethought,” occurs in the common law form. I do not believe there has been an exception to this, except by mistake. And under this form, the *129 courts have always treated the concluding clause, averring a purpose to kill, as substantive and to be proved. Every reported charge of our courts shows this to be so.
"Where, in the common law form, the length and breadth of the wound causing death is described in the indictment, it is preceded by the averment, thus: “giving the said C. D. one mortal wound,” etc. Now, if this is held to be an averment of a purpose to kill, and, to satisfy the terms of the statute, it is a fortunate accident. So, in common law forms, where the death [is not caused by the direct act of the prisoner, as preparing poison or an infernal machine, the indirect act of the prisoner is averred to be done with purpose to kill, etc. Now, we will venture to assert that, with these two accidental exceptions, indictments generally heretofore drafted in this state, and upon which citizens have been convicted and hung, were fatally erroneous under the views of the majority of the court in this case.
The form of the indictment in the case of Shoemaker v. State, 12 Ohio Rep. 43, is given in Warren’s Or. Law and Forms 34. It is the same as the one under consideration. One among the most astute and able pleaders in the state prosecuted the writ of error in that case, but failed to discover any defect in the indictment, and his client was hung.
The indictment in the case of The State v. Gardner, Wright’s Rep. 392 (which has been examined since this ease was before us), and in which the court so emphatically lay down the rule as to the proof of a purpose to kill, was precisely like the indictment now under consideration.
In the case of Moore v. The State, 2 Ohio St. Rep. 500, the third count of the indictment, upon which the prisoner was convicted, is set out in the report; and it was assigned for error, that the count was informal and unsubstantial in its character. The argument of counsel is not given. “The indictment,” the court say, “is sufficient.” The indictment is precisely in the form of the one now under consideration, and the prisoner is in the penitentiary tinder *130 sentence for life. Although the form of the indictment was decided upon and settled in that case, it is said that this precise question was not raised by counsel. Probably not. It is not raised by counsel in the case we are now considering, and we are willing to concede that it never was raised until done by this court sua sponte. And if this be so, it seems to us that, after nearly fifty years of practice, in which the courts upon this form of indictment have pronounced sentences of death, without objection by counsel or court, it is the highest and most undoubted judicial sanction of the form.
If any human event should be wrought out with the certainty of fate, it is the conviction and punishment of a deliberate murderer. While no rule of law should be violated to reach the guilty, so no new technicality or artificial subtlety should be introduced to stay condign punishment.
The fact that in England, until a comparatively recent period, the punishment of death was by statute inflicted for a multitude of crimes, not less than one hundred and sixty in number, and many of them of but minor aggravation, renders the policy of the English bench, during the time when the rules of criminal pleading were in process of formation, of maintaining an excessive technicality, very natural and honorable to its humanity. The reasons for such a judicial policy, however, have no foundation in the legislation of this state; but, on the contrary, excessive technicality in criminal pleading thus originated, is felt by many of the best minds of the country to he a serious practical evil, tending greatly to give impunity to crime, and not at all to the security of innocence. These considerations, while they will not justify, except by legislative, interference, a relaxation of rules well established, do certainly demand that we should not add to their number or their stringency.