## STATE v. HILL.

1. . There being no authority for issuing a writ of *venire* to summon additional jurors, drawn from the tales-box, defects in such a writ furnish no ground for an arrest of judgment.
2. The law does not require the name of the attorney-general or solicitor of the Circuit to be signed to a writ of *venire.*
3. A writ of *venire* commencing "State of South Carolina, county of Spartanburg. To the sheriff of Spartanburg county," &c., is a sufficient compliance with the constitutional requirement, (*Art. IV.,* § 31,) that "all writs and processes shall run in the name of the State of South Carolina."\*
4. A person who steals a horse in another State, and brings it into this State and here converts it to his own use, can be indicted here for larceny.

---

Before WITHERSPOON, J., Spartanburg, March, 1883.

---

\* See *Notes of Causes,* No. 1413, *State* v. *Gilreath,* at the end of this volume, where the same objections to the writs of *venire* for original jurors are raised and decided.

The presiding judge thus reports the case:

The defendant, Lang Hill, was indicted and convicted for horse stealing. Evidence on the part of the State, the defendant offering no testimony, showed that the defendant, on or about October 10th, 1882, was at the house of one Thomas J. Neely, who lived in Transylvania county, N. C. Defendant was engaged in repairing sewing machines, and was several days at said Neely's and in his neighborhood. Defendant represented to Neely that he had a horse and buggy and some tools on Cane creek, in Henderson county, N. C., and desired to get the use of Neely's horse to go for them. He obtained said horse from Neely and promised to return the same in a week.

Neely received information in a few days that defendant was trying to sell his (Neely's) horse in the town of Hendersonville, N. C. He went in pursuit of his horse, and on the following week found it at the livery stable of one G. D. Carrier, in the town of Spartanburg, S. C. The proof was that Carrier had purchased the horse from defendant, who represented to him that it was his (defendant's) property; that Carrier had paid him a portion of the purchase-money; that the prosecutor, Neely, identified the horse as his, and the defendant admitted that it was the horse of Neely. The defendant was then arrested. The proof was that Cane creek was not in the direction of Hendersonville or of Spartanburg, but in the opposite direction, and towards Asheville, N. C.

The jury found the defendant guilty, and the defendant was sentenced to two years at hard labor in the penitentiary. A motion for new trial was made and argued before me, which I refused because I thought the evidence sustained the verdict. A motion in arrest of judgment was made upon the exceptions presented, which was also refused, because I could see no error in my rulings.

I charged the jury that the defendant was indicted for stealing a horse in Spartanburg county, S. C., and not for stealing a horse in North Carolina, and that if they were satisfied from the circumstances and facts of the case, that when defendant obtained the horse he intended to steal him, or convert it feloniously to his own use, and that the hiring or borrowing was only a pre-

text to obtain possession, the intent being to steal, and defendant brought the horse to Spartanburg and converted the property feloniously to his own use, and to deprive the owner of the same, it would be larceny. But of all this they must be satisfied beyond a reasonable doubt from the proof. That the question of intent was one for the jury, which they must determine from all the facts and circumstances of the case, and that they were bound to give the benefit of every reasonable doubt which might arise to the defendant. Requests one, two and five were charged as requested.

There was no proof whatever offered tending to show in any way the purpose of defendant to return proceeds of the sale of the horse to the owner, and I therefore declined to charge a supposed case, which is embraced in the third request to charge.

The defendant only challenged three jurors. On the first day of the term I ordered that the names of .five persons be drawn from the tales or five-mile-box to fill the deficiency in the number of petit jurors, which was drawn under my direction by the jury commissioner in the presence of the clerk and sheriff, and the said order directed them be " summoned when so drawn forthwith." I regarded the *venire facias* for grand and petit jurors as sufficiently regular, and that there was no irregularity in either writ, or in the drawing, summoning, returning or impaneling of the jurors, by which the defendant making objection had been injured, or to which any objection was made or exception taken before the returning of the verdict.

At the trial the defendant presented the following requests to charge :

1. " That unless the horse was taken from Neely with a larcenous intent, then the defendant cannot be convicted of horse stealing.

2. " That if the horse was hired with intent to return him to the owner, and afterwards determined to convert him to his own use, then the defendant cannot be convicted under this indictment.

3. " That if the prisoner sold the horse to Carrier with intent to account for his value to Neely, he cannot be convicted under this indictment.

4. " That if the horse was taken in North Carolina with a felonious intent and brought into this State, he cannot be convicted here of horse stealing.

5. " That the prisoner cannot be convicted under this indictment if the facts show only a breach of trust with fraudulent intent."

The defendant appealed upon the following grounds:

1. " That his Honor erred in refusing to arrest judgment upon the following grounds: That neither the grand jury, which presented a true bill, nor the petit jury which rendered the verdict herein, was a legal jury; that neither of said juries was drawn, summoned or impaneled according to law in this case: (1). That neither in the original nor additional writs of *venire* are any names of persons who were to sit as either grand or petit jurors at the present term of this court. (2). That the names of said jurors were not even annexed to said writs of *venire*. (3). That no one of said writs are or were issued in the name of the attorney-general or of the solicitor of the Circuit. (4). That the original writs of *venire* contained no proof whatever of the summoning of many of the aforesaid grand or petit jurors. (5). That the said grand or petit jurors were not summoned either by the sheriff or deputy sheriff. (6). That the said writs do not show that they were summoned within the time required by law. (7). That the original writs of *venire* were not returned to the clerk before the time of opening and holding said court. (8). That the record shows no proof that any of said writs of *venire* were ever served upon the jury commissioners. (9). That no one of said writs of *venire* runs in the name of the State of South Carolina. (10). That neither of the writs of *venire* for grand jury, nor the writ of *venire* for the original petit jury, were issued under the seal of this court. (11). That the writ of *venire* issued for additional jurors in term time, and on the first day of the present term of this court, was not issued under the seal of the court. (12). That the additional jurors were not drawn as required by sections 2631 and 2637 of the general statutes. (13). That E. W. Cummings, one of the jurors who tried the case, was drawn as an additional juror.

2. " Because his Honor, the presiding judge, erred in not

charging as requested, ' That if the horse was taken in North Carolina with a felonious intent and brought into this State, he cannot be convicted here of horse stealing.'

3. " Because his Honor erred in charging the jury that if they believed that when the defendant borrowed the horse in North Carolina he intended to commit larceny, and afterwards brought the horse into South Carolina and sold him, the defendant could be convicted in South Carolina under the indictment.

4. " Because his Honor erred in not granting a new trial, as asked, no larceny having been proved, but only a breach of trust."

*Messrs. Bobo & Carlisle*, for appellant, on the motion in arrest of judgment, cited *Const. of S. C., Art. IV.*, § 31 ; 14 *Rich.* 49 ; 6 *Binn.* 179 ; *Mill. Comp.* 179 ; 1 *Rich.* 188 ; 2 *Spears* 211 ; 11 *S. C.* 321 ; *Gen. Stat.* (1882), §§ 742, 2243, 2246 ; 3 *Strobh.* 33 ; *Circuit Court Rules, XXIII.* The taking being in North Carolina, and the jury having found that the taking was with felonious intent, defendant cannot be convicted in South Carolina for horse stealing. *Const. U. S., Art. III.*, § 2, *Art. IV.*, § 2, *VI. Amend.* ; 9 *Rich.* 113 ; *Whart. Confl. L.*, § 322 ; *Rorer Inter-State Law*, 234 ; 3 *Gray* 434 ; 2 *Johns.* 477, 479.

*Mr. Solicitor Duncan*, contra.

June 29th, 1883. The opinion of the court was delivered by

MR. JUSTICE McIVER. The defendant having been convicted under an indictment for horse stealing, moves in arrest of judgment upon the ground of sundry alleged defects in the writs of *venire*, by which the jurors were summoned, and also for a new trial upon the grounds of certain alleged errors in the charge of the Circuit judge.

The grounds relied upon in arrest of judgment may be divided into two classes : 1. Those which rest upon alleged defects in the writ of *venire*, issued to summon five additional jurors, drawn from the tales-box to supply a deficiency in the number originally summoned. 2. Those which allege defects in the original writs of *venire* under which the grand and petit jurors for the term were summoned. Inasmuch as there was

not only no necessity, but also no authority, for issuing a writ of *venire* to summon the five additional jurors drawn from the tales-box, (*State* v. *Williams*, 2 *Hill* 381; *State* v. *Stephens*, 11 *S. C.* 319,) the several objections urged to this writ require no further notice.

The principal objections urged to the original writs of *venire* are: 1. That they are not signed by the attorney-general or solicitor of the Circuit. 2. That they do not run in the name of the State of South Carolina; the other objections being either abandoned or so plainly untenable that they were not relied upon in the argument here. The first objection rests upon the provisions of section 742 of the General Statutes of 1882, but that section only requires the clerk " to issue every execution, bench warrant or other process issuable or directed to be issued by the courts of sessions, in the name of the attorney-general or solicitor of the Circuit," and has no application to a writ of *venire* to summon jurors both for the Courts of Sessions and Common Pleas.

The next objection rests upon the provisions of section 31, article IV. of the constitution, which provides that, "All writs and processes shall run and all prosecutions shall be conducted in the name of the State of South Carolina." The writs of *venire* in this case are in the following forms:

" STATE OF SOUTH CAROLINA, }
    " County of Spartanburg.     }
" *To the Sheriff of Spartanburg County:*
    " You are hereby strictly required and commanded," &c.

And it is urged that this is not the proper form, but that it should be as follows:

" THE STATE OF SOUTH CAROLINA.
" *To the Sheriff of Spartanburg County, Greeting:*
    " You are hereby strictly required and commanded," &c.

It appears to us that this is a distinction without a difference. If it anywhere appears in the writ that it is issued in the name

of the State, there is a sufficient compliance with the constitutional requirements; and surely the mere location of the words upon the paper can have no special virtue. Nor can the addition in the caption of the words, "County of Spartanburg," impair the validity of the mandate, for they may well be regarded as mere surplusage. Indeed, they may perhaps be treated as serving only to indicate that the officer who issued the writ, whose authority is limited to that county, was properly invested with authority to use the name of the State in that particular locality.

These views are well supported by authority. In *State* v. *Smouse*, 49 *Iowa* 634, the information was for violating one of the ordinances of the city of Washington. It was in the following form: "The State of Iowa, City of Washington v. Charles Smouse," and the objection taken was, that it should have been in the name of the city and not of the State. The court held. that the words "State of Iowa," should be regarded as descriptive merely, or rejected as surplusage, as it clearly appeared from the body of the information, that the prosecution was by and in the name of the city. In Mississippi, where the constitutional provision is like ours, it was held in *Greeson* v. *State*, 5 *How.* (*Miss.*) 33, that a formal statement in the indictment that it was found by the authority of the State, is not necessary if it appears from the record that the prosecution was in the name of the State. In *White* v. *Commonwealth*, 6 *Binn.* 179, (6 *Am. Dec.* 443,) the objection to the process for summoning the jury was, that it should have commenced: "The Commonwealth of Pennsylvania to the Sheriff, Greeting:" whereas it commenced: "The Judges to the Sheriff, Greeting: In the name and by the authority of the Commonwealth of Pennsylvania, you are hereby commanded, &c." The constitution then in force in that State, Article V., section 12, declared: "The style of all process, shall be, "'The Commonwealth of Pennsylvania,'" &c. The court held the objection untenable, saying: "It is of no consequence in what part of the process the Commonwealth is introduced, so that the command is given in its name."

We think that the writs of *venire* is this case conformed, sub-

stantially, to the constitutional requirement, and, therefore, the motion in arrest of judgment cannot be sustained.

The motion for a new trial presents a question which has been before the courts of the several States upon frequent occasions, and the decisions are conflicting. In this State we have no distinct adjudication upon the question, though there is a case hereinafter referred to, which, by analogy, seems to control it. The question is, whether one who steals a horse in another State and brings him into this State, and here converts him to his own use, can be indicted here for larceny. In 1 *Bish. Cr. L.* (*6th edit.*), §§ 136–143, the question is discussed, and the conclusion reached that such an indictment can be sustained.

This conclusion is well supported, both by reason and authority. The principle upon which this doctrine rests is, that the possession of stolen property, in contemplation of law, remains in the owner, and the thief, therefore, is guilty of larceny in every place into which he carries the goods, as " every moment's continuance of the trespass and felony amounts to a new caption and asportation."

The case of *Watson* v. *State*, 36 *Miss.* 593, furnishes an able and elaborate discussion of the question. In that case the learned judge who delivered the opinion of the court, Harris, J., shows that both upon principle and authority a person who steals goods in the State of Alabama, and carries them into the State of Mississippi, and there converts them to his own use, may be indicted for larceny in the latter State, for the reason that the legal possession still " remaining with the owner, every moment's continuance of the trespass and felonly amounts, in legal contemplation, to a new caption and asportation." He also shows that the cases which hold a contrary doctrine, resting, as they do, ultimately, upon *Butler's Case*, cited in 13 *Coke Rep.* 53, are based upon a misconception of the real ground upon which that case was founded. Again, he says: " The proof involves the intent and the act. The existence of the intent may be shown in any locality, county, State or country. The commission of the act must be shown in the county where the indictment was had. There is a wide difference between the proof of the act and the evidence of the intent with which it

was done. The intent precedes the act, and may evidence at different times and in various jurisdictions. It may be shown by the declarations of the actor, or by facts and circumstances happening in a distant country or a different jurisdiction from that where the actual offense occurred."

Hence, we may well look to the felonious taking in another State for the purpose of ascertaining the intent, and when the act is consummated in this State by bringing the stolen property here and converting it to the use of the thief, the offense is complete here. In *State* v. *Ellis,* 3 *Conn.* 185, it was held that the stealing of a horse in another State and carrying him into the State of Connecticut constituted the crime of larceny there. In Massachusetts there are several cases holding a similar doctrine. *Commonwealth* v. *Cullins,* 1 *Mass.* 116, followed by *Commonwealth* v. *Andrews,* 2 *Mass.* 14, in which the decision is said to rest upon the principle " that the original taking being felonious, every act of possession continued under it by the thief is a felonious taking, and wherever he carries the articles stolen he may there be indicted, convicted and punished for the felony." These cases were recognized and followed in *Commonwealth* v. *Holder,* 9 *Gray* 7, and *Commonwealth* v. *White,* 123 *Mass.* 433, decided as late as 1877.

It is true that in the case of *Commonwealth* v. *Uprichard,* 3 *Gray* 434, it was held that one who steals goods in one of the British Provinces (Nova Scotia) and carries them into the State of Massachusetts, cannot be indicted there for larceny. Shaw, C. J., delivering the opinion of the court, while recognizing the authority of the two cases above cited from 1 and 2 *Mass.,* distinguishes the case of a larceny committed in a foreign country from one committed in another State. While plainly intimating the opinion that if the question were an open one it might be decided differently, he undertakes to put those decisions upon the ground of the peculiar relations existing between the States of the Union, which, as he says, are somewhat analogous to the relations existing between the several counties of a State—a ground which we do not find taken anywhere else, and one which we are by no means disposed to adopt, and wholly ignores the true ground upon which these decisions, as well as

others of the like character, do rest, viz.: that where one takes goods from another in any place, under circumstances which make the taking felonious, the possession of the owner, in contemplation of law, continues, and where the goods so taken are carried into another State, that constitutes a new taking and asportation in that State, for which an indictment for larceny will lie.

In *Worthington* v. *State*, 58 *Md.* 403, a very recent case, it was held that where a person steals goods in one State and carries them into another, the act of carrying the stolen property into the latter State is a new larceny for which the thief may there be indicted. This case furnishes a full collection of the authorities.

In this State, as we have said, the point under discussion has never been distinctly decided. In the *State* v. *Bryant*, 9 *Rich.* 113, our court held, that where a horse is stolen in one district (county) and is carried by the thief into another, and there sold, an indictment under the statute for horse stealing might be maintained in the latter district; but they declined to express any opinion upon the question now presented for our decision, as it was not then before them. It seems to us, however, that the reason given for the decision applies with equal force to the case now under consideration, and is practically the same reason as that given for the decisions in the other States, which we have hereinbefore cited. Judge Whitner, in delivering the opinion of the court, uses this language: " The property in the goods is not changed, and the law considers them in the possession of the proprietor until he is legally divested. The continuance of the trespass is as much a wrong as the original taking, and therefore the continued possession of the wrong-doer is a continued taking and at each moment manifests the same disposition (*animun furandi*) that prompted the original act." This case, then, may well be regarded as authority for the view which we have taken, as it really rests upon the same principle.

The ground taken in most of the cases which hold a contrary doctrine, that the view which we have adopted may render a person liable to be indicted twice for the same offense, we do not think entitled to any weight. In the first place, it may well

be doubted whether it is the same offense; and even if it were, we know of no law which exempts a person from liability to answer for a violation of the criminal law of this State simply because he may be liable to indictment elsewhere for the same offense. What effect an indictment and conviction for the larceny committed in the State, where the property was originally stolen, might have, we are not now called upon to consider. Indeed, we are at a loss to see with what reason a felon who has rendered himself amenable to the laws of this State, can claim exemption simply because he has violated the law of another State. As is said in 1 *Bish. Cr. L.*, § 142: "The common law either admits of two convictions in such a case, or it does not. If it does, there is nothing in the objection; if it does not, then the first conviction, in whichever locality it takes place, may be pleaded in bar of the second. The common law, however, knows no such plea in defense of a prosecution as liability to indictment elsewhere."

We see no error, therefore, either in the refusal to charge as requested or in that part of the charge which is excepted to. The judgment of this court is, that the judgment of the Circuit Court be affirmed.