By the court.
The last exception to the verdict, has been properly relinquished on the argument.
Neither was the first insisted on, with much hopes of success. The judges who tried the cause, did not sum up the evidence in their charge to the jury. The trial had continued five days; a great number of witnesses were examined as to *377 a variety of facts, and both the law and fact were fully con-considered, and very ably argued by the counsel on both sides. The court under a few general remarks, left the matter of fact *3781 solely to ^ie decision *of the jury; and we now feel d ourselves precluded from giving our sentiments on the weight of evidence, either way.
The second, third and fourth objections against the verdict may be considered under two heads; the misbehaviour of some of the jurors in laying wagers, and in eating and drinking at the plaintiff’s expence, and of others prejudging the cause.
As to Skiles’s betting, unless it produced a bias on his mind, it cannot be a reasonable ground of exception. If we suppose him so interested a character, as to be capable of giving an improper verdict, to gain a wager of a pint of wine, we must also necessarily suppose, that the loss of a gallon and one half pint, would make a still stronger impression on him, and influence his judgment on the other side. But it appears from the testimony, that when Mercer offered to pay the wine he had lost to him, he actually forgot that he had laid the wag-er with him. We must therefore .conclude, that he was not biassed in favour of the plaintiff, by this small bet.
The evidence is not sufficiently strong to establish the jurors eating and drinking at the plaintiff’s expence. We shall always discountenance such practices; but the law calls for clear and full proof. Wherever it appears to be done to induce favour, we shall not fail to punish such conduct. But unless there was management, or the intention of young William- M’Causland-was criminal in what he did, it could have no effect on the verdict. We see no circumstances, from whence we can infer undue management, or a criminal intention. The proof is also defective, as to any of the jurors prejudging the cause. It were much to be wished, that the minds of jurors should be as white paper, but it can scarcely be expected, where they come de vicineto. Every judicial as well as political system has its disadvantages, as well as advantages. The view previous to the trial, was an improper measure; it could answer no purpose, that could not fully be supplied by oral proof; and some of the jurors may have received improper impressions there. But prejudging and giving an opinion on the statement of certain facts, are very different things. The first implies a strong disposition to favour the one side or the other, a determination to find in one way, let the evidence be what it will. The last involves the truth of certain facts and propositions in the sentiments delivered; and impressions thus made may be effaced by the production of other evidence. It was natural enough for some of the jurors to discover an inclination towards the plaintiff, upon a very full and elaborate opening by one of his counsel; but this most probably was under an idea, that the facts stated *378 would be fully proved. It is material to consider also, that what the jurors did say, was amongst them*selves [-*079 only. Our own experience teaches us, that few per- *- sons can keep their minds in perfect equilibrio, upon hearing a strong statement on one side only. Such leanings however ought to be guarded against, and resisted with firmness, until the whole evidence is gone through and closed.
Cited and approved in 7 W. & S., 419, and 74 Pa., 461.
Messrs. Ingersoll, J. B. M’Kean and Hopkins, pro quer.
Messrs. "Tilghman and Montgomery, pro def.
We are on the whole of opinion, that the rule to shew cause should be discharged; and we are strengthened therein, by the consideration, that this trial is not peremptory, but the defendants may, if they think, proper, commence a new ejectment.-
Rule discharged.