## Commonwealth *against* Flanagan.

If murder be committed in the perpetration of arson, rape, burglary or robbery, it is not necessary that it should be so set out in the indictment.

Upon a conviction for murder, it is not good ground for a new trial, that there was a great excitement in the public mind against the accused.

The expression of an opinion by a juror, with regard to the guilt or innocence of a defendant before he is called to the box, is a good cause of challenge, but after trial it is not a sufficient cause for granting a new trial. If the juror had prejudged the case, leaving his mind unopen to conviction, it would be a good cause to set the verdict aside.

After-discovered testimony which is but cumulative or corroborative of evidence given on the trial, is not a sufficient reason for a new trial.

MOTION for a new trial in the Oyer and Terminer of *Cambria* county, in the case of the Commonwealth against Bernard and Patrick Flanagan, who were indicted and convicted of murder in the first degree, before Judge WHITE.

This motion was argued before Justice ROGERS, by

*Rhey* and *Coxe*, for the prisoners.
*M'Dowell* and *Miles*, contra.

ROGERS, J.—This case comes before the court under unusual, and somewhat peculiar circumstances. The prisoners at the bar were indicted for the murder of Elizabeth Holder, on the night of the 31st July 1842. The 5th October following they were arraigned and tried, and after a patient and protracted investigation, the trial resulted in a verdict of murder in the first degree. A motion was made for a new trial, which was overruled, and on the 15th October the court proceeded to sentence the prisoners. The record of conviction, with the testimony, having been submitted to the governor, and examined, a death-warrant was issued, the execution of which was suspended in consequence of some proceedings which in the meantime had taken place in the Legislature, to which it will be my duty briefly to advert. The attention of the Legislature having been called to the trial, on the 5th April 1843 they passed an Act, entitled an Act concerning a certain trial for murder in Cambria county, authorizing and requiring the Oyer and Terminer of that county to enter, if requested by the defendants, a rule to show cause why the sentence of the court and verdict of the jury should not be set aside, and a new trial be granted; and if the court, on hearing, should be satisfied that according to the principles of law, which ought to govern in such cases, a new trial should be granted, they are authorized to make

[Commonwealth v. Flanagan.]

the rule absolute, and to proceed to another trial and final judgment as soon as practicable.

The second section gives to the President Judge of the county of Cambria the option of trying the case or not, as he may deem proper and right; but on his refusal he is directed to certify the fact to the President Judge of the fourth judicial district, who was required to proceed in said Court of Oyer and Terminer, and to do and perform, with one or more of the associate Judges of the county, all things specified in the first section of the Act, touching the rule to show cause, and the final disposition of the case, with like effect and form as if done before the proper President of the court. His honour Judge White declining to act, certified the fact to the President Judge of the fourth judicial district, who, on constitutional grounds, as I understand, refused to obey the injunctions of the Act. This mode of review thus proving abortive, on the 4th April 1844 the Legislature passed a supplement, authorizing and requiring one of the Judges of the Supreme Court, with one or more of the associate Judges of Cambria county, to hold a special Court of Oyer and Terminer for hearing and determining this motion. This Act the Judges of the Supreme Court, after full deliberation, unanimously refused to execute, and having respectfully represented to the Legislature the constitutional objections to the Act, they, on the 25th April 1844, passed the present Act, repealing so much of the former Act as requires one or more of the associate Judges of Cambria county to sit with the Judge of the Supreme Court. The Judge who holds the court is required to hold it some day prior to the 4th July 1844, of which notice was to be given in proper time. He is authorized to examine the record of the Oyer and Terminer, and has power to receive the testimony of witnesses, either through depositions or by oral examinations. It is under and by virtue of the several Acts to which I have adverted, that this motion for a new trial has been made in behalf of the defendants.

By the Act of the 5th April 1843, which must govern the case, a new trial is to be granted, if the court, on hearing, be satisfied that, according to the principles which ought to govern in such cases, a new trial should be granted. The cause, therefore, must be heard and decided on the same principles as if the motion for a new trial had been made within the four days. The Legislature have enlarged the time, without, in any other respect, undertaking to change the rules and principles of law.

In connection with the reason assigned for a new trial, I have examined the testimony given on the trial with that care and attention which its importance to the individuals implicated demands. That investigation, it grieves me to say, has resulted in the conviction of the correctness of the verdict. The evidence, it is true, is almost, if not entirely circumstantial; but such a train of circumstances are proved, that, if they are believed, lead to the

[Commonwealth v. Flanagan.]

irresistible conclusion of the guilt of the prisoners. It is impossible to account for their conduct on any other rational supposition; and, under the pressure of the evidence, the Court of Oyer and Terminer could not do otherwise than overrule the motion made by the defendants' counsel for a new trial. The evidence being circumstantial, is of itself no reason for disturbing the verdict, although it is a powerful reason for great deliberation and care in the investigation. The evidence, in justice to the accused, should be nicely watched and carefully scanned. It was with a full impression of this truth that I examined the evidence given on the trial, which has resulted in the opinion which has been already expressed. It cannot be denied that there have been melancholy instances of the execution of innocent persons, convicted on circumstantial testimony. But these cases are rare, and, besides, the same may be said with equal, if not greater truth, of convictions on what is called positive proof. It was properly said that every case must be submitted to the common sense of the jury; for if the evidence produces conviction on the record, and satisfies the judgment, whether it be circumstantial or positive, that is sufficient. The evidence must be received, and so the court instructed the jury, with great caution; and before we yield our conviction, we must be satisfied that the conclusion sought to be established is inconsistent with any other rational hypothesis, or different state of facts. In this case, the fact of the murder admits not of a rational doubt, and the innocence of the prisoners is irreconcilable, upon any rational hypothesis, with the facts and circumstances which are in proof. Of course, I must be understood as speaking of the case as it appeared in evidence on the trial. How far it may be changed by after-discovered testimony, remains yet to be seen.

The counsel of the prisoners, to their credit be it said, have admitted that Judge White, the President of the court, discharged his duty fairly, impartially, with great ability, and to the entire satisfaction of the counsel of the prisoners; that he allowed them full and ample time for consultation as to whether they would apply for a continuance of the case or not, and also time to make the necessary preparation for the argument. An impartial and careful examination of the trial, from its inception to its conclusion, fully confirms the concession of counsel. The charge contains a clear and lucid summary of the evidence, with an able exposition of law as applicable to the facts, and is certainly as favourable to the prisoners as they had the least reason to expect. But, notwithstanding the weight of the evidence going to establish their guilt, the prisoners, it is conceded, have a right to a fair and impartial trial; it is better that the guilty should escape punishment, than the innocent should suffer. This is the humane principle of law, which has a controlling influence in trials for misdemeanors, as well as for offences of a deeper dye.

VII. — 53

[Commonwealth v. Flanagan.]

With these preliminary remarks, which are believed to be essential to the proper understanding of the peculiar circumstances of the case, and an act of simple justice to the court, I shall now proceed to notice the reasons assigned for a new trial. They are, an objection to the charge, undue excitement adverse to the prisoners, the misconduct of the jurors, and of some of the principal witnesses for the Commonwealth.

It is objected to the charge, that the prosecution established the degree of the offence by adducing evidence to prove that the crime was committed in the perpetration of a burglary, without averring that fact in the indictment. This point was made at the trial, and the court instructed the jury that, in cases of homicide committed in the perpetration of certain offences, viz., arson, rape, robbery, burglary, all idea of intention was excluded. The act in which the malefactor was engaged was of such a nature, so deep a crime, involving such turpitude of mind, and protection against which was so necessary to the peace and welfare of all good citizens, that our Legislature considered the intention as of no consequence, and accordingly decreed death to be the penalty of such offences. But the law has introduced no change in the form of the indictment; no new offence was created; it was only dividing the common-law offences, and reducing the punishment for one modification of the offence. From the passage of the Act of Assembly, a cotemporaneous construction and practice has prevailed; and it is not required of the Commonwealth to state in the indictment the grade of the offence, whether it was committed in the commission or attempt to perpetrate the offences enumerated in the Act of Assembly. It is for the jury to decide the degree of murder by their verdict, from the evidence laid before them; and if the homicide took place in the commission or attempt to perpetrate any of the four offences enumerated above, it is their duty to return a verdict of murder in the first degree; and the same if they find it was a wilful, deliberate killing.

This view of the law is sustained by the case of *White* v. *The Commonwealth*, (6 *Binn.* 179). In an indictment for murder it is not necessary so to describe the offence as to show whether it be murder in the first or second degree. Chief Justice TILGHMAN says, "It has been the practice, since the passing of this law, not to alter the form of indictments for murder in any respect; and it plainly appears, by the Act itself, that it was not supposed any alteration would be made. It seems taken for granted that it would not always appear on the face of the indictment of what degree the murder was, because the jury are to ascertain the degree by their verdict; in a case of confession, the court are to ascertain it by examination of witnesses. But if the indictment were so drawn as plainly to show the murder was of the first or second degree, all the jury need do would be to find the prisoner guilty, in manner and form as he stands indicted. In the case of

*The Commonwealth* v. *Joyce and Mathias,* who were convicted of the murder of Sarah Cross, it was moved in arrest of judgment, because the indictment did not charge the murder to have been committed by a wilful, deliberate and premeditated killing, as expressed in the Act of Assembly. But the motion was overruled, and the murderers executed. On the authority of this case, the exception to the charge is overruled.

It is further said that the prisoners had not and could not have a fair trial, in consequence of the great and undue excitement which existed against them. That great excitement should extensively prevail among the people in the vicinity, after the commission of so great an outrage, may be readily believed, without express proof of its existence; that it did exist, we have no reason to doubt; but that the state of feeling was unknown, either to the prisoners or their counsel, cannot be supposed without proof. Ample time was allowed by the court for consultation as to whether they would apply for a continuance, and also time to make the necessary preparation for the argument. It was with their own consent the cause was tried; and it is now too late, after taking the chance of an acquittal, to allege that as a reason for a new trial. Had a continuance been granted, (and there is ground to believe it would not have been refused), the necessary measures might have been taken to change the venue to a neighbouring county, where impartial justice would have been administered. In *M'Corkle* v. *Binns,* (5 *Binn.* 340), it is ruled that a party must not take the chance of a verdict in his favour, and keep a motion for a new trial in reserve. If the court should lend a ready ear to applications of this nature, causes will always be tried in the midst of the excitement, relying on that, in case of conviction, as a valid reason for a new trial. It would follow that, the greater the excitement and the more enormous the offence, the greater chance there will be of a final acquittal.

Next, as to the alleged misconduct of the jurors in forming and expressing an opinion of the guilt of the prisoners before trial.

It is urged, and there are dicta to that effect, that a juror should be as white paper; superior to all suspicion of partiality, they must be *omni exceptione majores.* It has also been ruled, that, if they have declared their opinions, it is good cause of challenge. 1 *Bl. R.* 481; *Bul. N. P.* 302. Notwithstanding the general principle is freely admitted, yet the good of society requires that these rules must be taken with great qualification. Thus, in *M'Causland* v. *Crawford,* (1 *Yeates* 378), where the same objection to the verdict was vehemently urged, the court uses this language: " It were much to be wished that the minds of jurors should be as white paper; but it can scarcely be expected when they come *de vicineto.* Every judicial as well as political system has its disadvantages as well as advantages." If this be so in ordinary cases of property, much less should it be expected or required under the

peculiar circumstances of this case. That prejudice prevailed extensively in the county against the perpetrators of the murder, and that suspicion attached in the minds of many upright and conscientious men to the defendants, must be admitted; but that it was unknown to the defendants or their counsel, or, what is the same, it might not have been known to them if due diligence had been used, would require great credulity to believe. So also I must be permitted to remark, that the testimony adduced has failed to convince me that there was, either in the minds of the jury or in the community generally, greater excitement or prejudice than might be reasonably expected after the commission of such a revolting crime, particularly when the murder was recent, and the neighbours were in hot pursuit of the murderers. Loose, unguarded, or even violent expressions, made on such occasions and at such times, would be entitled to very little weight after verdict. That such a state of feeling, if it continued, would be a powerful reason for a postponement, or for a change of venue, may be readily admitted; but that it should be a valid reason for a new trial, in the absence of other considerations, is denied. The latter presents an entirely different question. It has been ruled, as has been already stated, that where a juror has expressed an opinion on the case, it would be a good cause of challenge, a challenge to the favour; but from this it by no means follows that the same rule must be applied on a motion for a new trial. Thus, in the case of *M'Causland* v. *Crawford*, already cited, this distinction is taken, the good sense of which is its best recommendation. "Prejudging and giving an opinion" (as is there said) "on a statement of certain facts, are very different things. The first implies a strong disposition to favour the one side or the other; a determination to find in one way, let the evidence be what it may. The last involves the truth of certain facts and propositions in the sentiments delivered; and impressions thus made may be effaced by the production of other evidence." The first involves a charge of gross misbehaviour, amounting to criminality, on the part of a juror who consents to serve on a jury, when he must know he has precluded himself from forming a just judgment by a prejudication of the case; a determination to decide, right or wrong, in a particular way. The second, that which is natural to the human mind, to form and even to express an opinion on a supposed state of facts—an opinion only binding or influencing them, provided the case should turn out as it has been represented. While the first, to the credit of human nature be it spoken, is rare, and cannot be believed without full and unexceptionable proof, the latter is of daily and common occurrence. One is immoral—the other may be excused; for experience teaches every man that few persons can keep their minds unbiassed upon hearing a strong one-sided statement, and particularly where the welfare and safety of society are at stake, as where an enormous crime has been com-

[Commonwealth v. Flanagan.]

mitted. Now, the impression which has been made on my mind from an attentive consideration of all the evidence, which it is unnecessary for me to give in detail, is, that it amounts to nothing more than the expression of an opinion on a given state of facts; to that abhorrence of crime which is excusable, if not commendable, immediately after the commission of a great outrage against the peace and welfare of the community of which the jurors were members. That it was of such a nature that it might and would have been effaced, provided the facts proved had been different from what was represented, there is not the least reason to doubt. Nor have I been convinced it was suffered to operate injuriously to the prisoners. There is nothing in the evidence to satisfy me that there was any disposition at the trial to find a verdict against the defendants, without regard to the evidence. It would take strong and unexceptionable evidence, free from all suspicion, to induce me to believe that any one of the jury impannelled in this case was guilty of a crime of such great moral turpitude, little short of the offence with which the prisoners stood charged, and that without any assignable or conceivable motive whatever. " Motions for a new trial," says the late Chief Justice, " are to be received with caution, because there are few cases tried in which something new may not be hunted out, and because it leads very much to perjury to admit new evidence after the party who has lost the verdict has had an opportunity of discovering his adversary's strength and his own weakness." 5 *Serg. & Rawle* 41. If this is to be feared in ordinary cases, where the right of property only is concerned, how much more must it be dreaded in a case such as the present, involving the life of two human beings, and when such extraordinary means have been resorted to, to save them from the perilous situation in which they are unfortunately placed.

Jurors have rights as well as the defendants, and I am not the person to cast upon them undeserved reproach or unmerited censure. To yield to accusations against them lightly made, or without strong proof, would weaken, if not bring into contempt, that useful and indispensable institution in the administration of justice, in a State desirous of preserving the principles of liberty and good government. Several witnesses have been examined, who prove expressions of feeling on the part of some of the jurors. But, viewing the testimony with that caution that is absolutely necessary to guard against mistake, and making due allowance for erroneous impressions, to which the nature of the kind of evidence given is peculiarly liable, I cannot bring my mind for one moment to believe that they have succeeded in establishing culpability in the jury, or in any member of it. The jurors implicated have been examined, and in every instance they either deny that any such conversations or declarations as were testified to by the defendants' witnesses ever took place, or have explained them in such a manner as to evince that it was said in jest, and forgotten as soon

VII. — 2 L

[Commonwealth v. Flanagan.]

as said, without any idea of expressing a serious or binding opinion as to the guilt or innocence of the prisoners. It must also be remarked, that, where others have been named as present, they have either not been produced by the defendants, or, where they have been produced, they confirm in some instances the allegations of the jurors. It also appears that there was no discussion in the jury, but that each of the jurors was of the opinion, and so declared at the first trial, that the defendants were guilty of the murder in the first degree.

It is difficult, if not impossible for men, in moments of general excitement, to repress all feeling, and refrain from expressing themselves in strong and emphatic language, which means but little at the time, and is soon forgotten, having none or a very slight influence on their future conduct.

That there was great excitement before the trial, and some of the jurors partook of that excitement, may be true; and they would have been more or less than men if they had not. But that it continued up to the time of trial, or amounted to a prejudication, the defendants have failed to convince me. And on them is the burthen of proof.

The distinction I take to be this: that where there is a legal adjudication of the case by the jurors before the trial—that is, a predetermination evinced to find a verdict, without regard to the evidence—it is a mis-trial, which, *per se*, entitles the party to another hearing; but where the evidence falls short of this, then, in addition, it is necessary to the success of the application to satisfy the court that injustice has been done by the verdict, and that another jury would find in a different way; making, of course, every reasonable allowance in favour of the party asking a new trial. And as I believe the latter to be the case here, it is necessary to examine the remaining reasons which have been assigned for another hearing.

And here let me remark, that I perceive no difference in this respect between a trial in a civil and criminal case. The same rules apply to both, notwithstanding the declaration in the Bill of Rights, that the accused have a right, in presentations by indictment or information, to a speedy trial by an impartial jury of the vicinage. That part of the constitution is declaratory of the common law, and was not intended to alter or curtail the rules and regulations which have ever governed motions of this kind. A party is entitled to a fair and impartial trial in civil cases also; but what constitutes a fair and impartial trial must depend upon the adjudication of the court, based upon certain fixed and fundamental rules. The constitution does not define what is an impartial trial; but that is left, as is most correct and proper, to legal adjudication.

As has been already observed, we must not lend too ready an ear to such applications; for it is to be feared that, were we to do

[Commonwealth v. Flanagan.]

so, as soon as the accused was convicted the trial of jurors would begin. In all cases of trials for capital offences, they would go into the jury box with fear and trembling, particularly if the Legislature should think proper to interfere with the trial by prolonging the time to make the motion for a new trial; thus giving the party accused and his friends time to hunt up every expression, frequently misunderstood or purposely misrepresented, which he had made in relation to the case.

The next and remaining reasons for a new trial are the third and fourth, which are so immediately connected that they may be considered together.

The defendants allege that they are entitled to a new trial, because several witnesses for the Commonwealth have, since the conviction of the prisoners, either admitted that they did not testify to the facts truly, or made statements inconsistent with the evidence which they gave on the trial; and because evidence, material and of great importance to the defence of the accused, has been discovered since the trial, of which the prisoners or their counsel had not the slightest knowledge, and which could not, therefore, be procured at the time by the use of due diligence.

That evidence has been discovered since the trial, of which the prisoners and their counsel were ignorant, may be readily admitted; but that it is of such a nature as will avail the defendants, is not so clear.

Thus a great deal of testimony has been given, which does not establish independent facts, material to the issue; but its only effect is to impeach the credit of some of the witnesses examined on the former trial. But the rule of law is, that the testimony must go to the merits of the case, and must not be merely for the purpose of impeaching the testimony of the witnesses. For newly discovered evidence, discrediting witnesses who testified on a former trial, a new trial is never granted. *Graham on Trials* 496; 10 *Wend.* 492.

So cumulative evidence, by which is meant additional evidence to support the same point, or where it is of the same character as evidence already produced, is not sufficient to induce the court to grant a new trial. 10 *Wend.* 285. Some of the evidence is cumulative merely, which of course would be a decisive objection to the motion on that ground.

But, aside from these objections, there are other reasons which, in my mind, are decisive against the motion. Granting new trials does not depend upon the whim or caprice of the judge, but upon well-established and fundamental principles of law. In the trial of issues of fact, the court judges of the competency, the jury of the effect, of testimony. But after the verdict, when the motion for a new trial is considered, the court must judge, not only of the competency, but of the effect of evidence. If, with the newly discovered evidence before them, the jury ought not to come to

[Commonwealth v. Flanagan.]

the same conclusion, then a new trial may be granted; otherwise they are bound to refuse the application. And in *Lewellen* v. *Parker*, (4 *Har. O. R.* 5), it is ruled that in considering the motion, the court will not inquire whether, taking the newly discovered testimony in connection with that exhibited on the trial, a jury *might* be induced to give a different verdict; but whether the legitimate effect of such evidence would *require* a different verdict. The question, therefore, is, (supposing all the testimony, new and old, before another jury), not whether they *might*, but whether they ought to give a different verdict. It is manifest, therefore, that if these principles be correct, granting a new trial would be almost, if not quite, equivalent to a verdict of acquittal.

But so far from being convinced that it would be the duty of another jury to acquit the prisoners, after a most attentive and anxious examination of all the facts, whether discovered since or given in evidence on the former trial, I cannot bring my mind to doubt (even to save the lives of two human beings) of the guilt of the prisoners. If, with the newly discovered evidence before them, a jury ought to come to the same conclusion as the former jury, it would be worse than useless to grant a new trial. For the support of this opinion, I refer to the remarks already made as to all the testimony. It is not my intention to analyze, nor is it necessary to enter into a critical examination of the evidence; for, even granting that the testimony of the witnesses assailed may be weakened, it is not destroyed; enough which has not been contradicted, and which cannot be gainsaid, remains to establish their guilt. Their conduct on the night of the murder, and subsequently until they were arrested, has not been explained to my satisfaction, and it is entirely inconsistent with their innocence. The attempt to throw suspicion on O'Donnel and others has, in my opinion, totally failed. I think it due to the witnesses to say, that I have not the slightest notion that they have *stated* what they *knew* to be false. In all material points, their testimony is fully corroborated by others, and by circumstances given in evidence about which there is no dispute. In immaterial matters there is some discrepancy, but not more than must necessarily attend on transactions of this kind. Indeed, the fact that there was no difference in the statements of the witnesses would of itself have induced a suspicion of some concert and design to suppress the truth. As, therefore, no doubt of the guilt of the defendants rests on my mind, I feel myself compelled most reluctantly to overrule the motion for a new trial.

Motion for a new trial overruled, and record remitted to the Court of Oyer and Terminer of Cambria county for execution.