HON. OBADIAH B. McFADDEN..................... DO    DO

BUTLER P. ANDERSON........................... CLERK

## LESCHI vs. WASHINGTON TERRITORY.

The general rule is, that statutes take immediate effect.

Pending prosecutions fall with the repeal of criminal statutes.

The act of Congress, Aug. 16, 1856, limiting the times and places of holding District Courts in this Territory, is not an act affecting jurisdiction; but simply designating times and places for the exercise of jurisdiction; and until such designation of times and places, of holding the Courts, is made by the Judges of the Supreme Court, the laws of the Territory, on the subject, are controlling

Does the VI amendment of the Federal Constitution apply to cases in Territorial Courts? *Quære.*

The act of the Territorial Legislature assigning Pierce County to the Second Judicial District, does not divest the prisoner of any constitutional right, nor does the fact, that the jury came from the body of the District instead of Pierce County; as such enlargement of venue is but an enlargement of Pierce County.

An indictment charging murder, as at common law, is sufficient to sustain a verdict of murder in the first degree under our statutes.

The peculiar circumstances distinguishing murder in the first degree, under our statutes, need not be set out in an indictment.

In case of a statutory offense, unknown to the common law, an indictment should charge the offense to have been under the circumstances and with the intent mentioned in the statute; but even in such case, the exact words of the statute need not be followed, provided words of equivalent meaning be employed.

The jury are to determine from the evidence the degree of the murder.

If the record shows the jury were *duly sworn*, this shows a proper oath was administered.

---

*LANDER, Chief Justice, was absent from the Territory during this term of Court.

In this case the jury returned a "verdict of guilty as charged, and that he suffer death." Held, sufficient to sustain a verdict for murder in the first degree.

If some counts in an indictment are good and some bad, a verdict is presumed to be based on the good counts.

A new trial should not be granted for newly discovered evidence, unless it is apparent to the Court that the evidence would alter the verdict.

Courts have power to restrain counsel, so as to keep them within the proper limits of the law.

It sufficiently appears, that the prisoner was present when the verdict was rendered, and sentence passed.

Error to the Second Judicial District holding terms for Pierce county.

Opinion by McFADDEN, Associate Justice.

The case comes before us, on a writ of error to the Second Judicial District. The prisoner has occupied a position of influence, as one of a band of Indians, who, in connection with other tribes, sacrificed the lives of so many of our citizens, in the war so cruelly waged against our people, on the waters of Puget Sound.

It speaks volumes for our people that, notwithstanding the spirit of indignation and revenge, so natural to the human heart, incited by the ruthless massacre of their families, that at the trial of the accused, deliberate impartiality has been manifested at every stage of the proceedings.

In the discussion of the grave questions presented, involving the life and personal liberty of the accused, we are anxious that none other than considerations of public justice, with due regard for the rights of the accused, under the law, should influence us, in the conclusions to which we may arrive, whether the accused be guilty or innocent. It is to be regretted, for the sake of the accused, as well as the future peace of the Territory, that a more summary mode of trial, one in accordance with the practice of the government and in perfect consonance with the rules of international law, had not been adopted. Annals of Congress, 15th Congress, 2d sess., vol. 2; *vide* Appendix, page 1938, *et seq.* Dispatches of State Department, U. S. This case, however, now devolves itself upon this Court, and we are not disposed to shrink from the obligations of duty.

It is assigned for error:

1. There is no legal indictment in this, to-wit: The term of Court, at which what purports to be an indictment was found, was unauthorized by law, and therefore is illegal and void, and the grand jury who found the same, had no legal authority to enquire into the offense charged.

2. The verdict is contrary to the evidence.

3. The Court erred in over-ruling the motion for a new trial.

4. The Court erred in over-ruling the motion in arrest of judgment.

5. The jury were not duly elected, tried and sworn according to law, to try the issue joined, in this, the oath required by law was not administered to them.

In considering this case, we shall reverse somewhat the order of proceedings as presented by the assignment of errors, and shall examine the first error assigned, in connection with the second proposition discussed by the counsel for plaintiff in error, under the fourth error assigned, to-wit: " That the plaintiff in error was entitled to a trial in the district in which the crime was committed, which district should have been previously ascertained by law."

In order to a true elucidation of this case, it becomes necessary to see by what authority, and under what legislation the Courts of this Territory have been organized, and the extent of their jurisdiction. It is provided by the organic law of the Territory, passed by Congress and approved March 2, 1853, that the judicial power of the Territory shall be vested in a Supreme Court, District Courts, and Probate Courts; the Territory is to be divided into three districts, and a District Court to be held in each of the districts, by one of the Judges of the Supreme Court, at such times and places as may be prescribed by law; the District Courts to have and exercise the same jurisdiction in all cases arising under the Constitution of the United States and the laws of the Territory, as is vested in the Circuit and District Courts of the United States.

Upon the organization of the Territory, the first legislative

assembly, in pursuance of the provisions contained in the organic law, divided the Territory into three districts. The only one necessary to be considered, for the purposes of this case, is the Third District, which was composed of the counties of Pierce, King, Island, Jefferson, Clallam and Whatcom. Sec. 6 of the act of 1854, page 448, laws W. T., sess. 1854, provides that two terms of the District Court shall be held in each county every year, to-wit: for Pierce county commencing on the first Monday in May and November. By an act passed subsequently at the same session, the Judges were assigned to their respective districts. Under this state of the law, Courts were held and judicial proceedings were determined by them up to October, 1856, when the Justices of the Supreme Court were placed in possession of an act of Congress, approved August 16, 1856, regulating fees, etc.; section 5 of which, provides, "that the Judges of the Supreme Court in each of the Territories, or a majority of them, shall, when assembled at their respective seats of government, fix and appoint the several times and places of holding the several Courts in their respective districts, and limit the duration of the term thereof: *Provided*, That the said Courts shall not be held at more than three places in any one Territory." U. S. Statutes at Large, vol. XI, page 49. In conformity with the provisions of said section 5, a majority of the Justices of the Supreme Court of this Territory, assembled at Olympia, the Capital of the Territory, on the tenth day of November, 1856, and proceeded to fix the times and places of holding the Courts in the several districts. In the Third District, in which was the county of Pierce, the two terms were appointed, the fall term, 1856, to commence on the third Monday of November, at Steilacoom, in said county of Pierce. On the assembling of the legislature, the districts were modified and the county of Pierce was included in the Second Judicial District.

A term of the District Court for Pierce county, was held subsequent to the passage of the act of Congress, August 16, 1856, and prior to the assembling of the Justices of the Supreme Court at the Capital of the Territory, in pursuance of said act, also prior to the transfer of Pierce county, by legislative act, to

the Second Judicial District.  At this term, which commenced on the third Monday of November, A. D., 1856, the grand jury, inquiring for the body of the county of Pierce, found a bill of indictment against the prisoner for murder.  At the same term the defendant was arraigned, and tried on said indictment; the jury not being able to agree, the case was, on the transfer of Pierce county by legislative act, passed into the Second Judicial District, and the defendant was put upon trial in the District Court for said Second District, in which was the county of Pierce, upon the indictment found against him in said Pierce county.  The jury returned a verdict of *guilty*, and by the provisions of our statute, found that the prisoner should suffer death.

Now it is true, as claimed by the counsel for the prisoner, that a statute ordinarily takes effect immediately after its passage unless there be a restraining or qualifying clause; this is too well settled for controversy.  *Matthers vs. Zane*, 7 Wheaton, 104; Kent's Com., vol. I, page 445.  It is equally well settled that if an offense be created by statute, and pending the prosecution the act be repealed, the whole case falls.  No judgment can be rendered in any suit for a penalty after the repeal of the act by which it was imposed; in other words, the repeal of a penal statute puts an end to all suits founded upon it.  3 Burr, 1456; 5 Cranch, 281; 3 Howard, 534, 13 *id.* 429.

The effect of legislative acts abolishing courts, transferring jurisdiction, or repealing laws, under which proceedings have been commenced, is so well understood by the profession that but little difficulty can arise.  All of the cases examined, refer to legislation which either transfers jurisdiction, creates it, or supersedes the enforcement of law by repeal.  None of the cases apply to the principle now under consideration.  In this case, the act of Congress of August 16, 1856, creates no new tribunal; it neither extends or diminishes the jurisdiction of the Courts of the Territory in cases of crime, but simply provides for a consolidation of the places of holding Courts in the several districts into one for each, and provides that the times and places of such terms shall be such as may be agreed upon

3

by a majority of the Judges of the Supreme Court when assembled at the seat of government. The practical effect of the act was to enlarge the area of the Territorial jurisdiction, by reducing into *one* that which before was exercised in several counties. No increased jurisdiction is given by the act over crimes or misdemeanors, no new offenses have been created, no increase or diminution of penalty for offenses already defined by law. It is not the abolition of one judicial tribunal and the transfer of its jurisdiction to another. That which was crime before the act of Congress still continues crime. The offenses of murder, arson and burglary still continue the same. The penalties for these and other offenses remain unchanged, neither diminished nor increased. The jurisdiction of the District Court for the Second Judicial District was not enlarged, so as to embrace any class of offenses previously excluded, nor yet was the jurisdiction diminished.

Did the case fall within the range of that numerous class arising from the repeal of the law creating an offense, it could be easily disposed of, but such is not the fact. It is claimed by the counsel for the prisoner that the act of Congress referred to, went into effect immediately upon its passage, and consequently worked a repeal of so much of the organic act, and also such laws of the Territory, as provided for, and regulated the District Courts of the Territory. We have seen that it is well settled, as a general principle, that a statute properly enacted, takes effect from the date of its passage; and it is now too well settled to gainsay the rule, by reason of the hardships or injustice which may result from it. Now, if there is nothing in the act of Congress indicating the time when the statute shall take effect, it must be considered as in force from the date of its passage. It is necessary, therefore, to recur to the act for the purpose of construction. It has been said that where the intention of the legislature or the law is doubtful and not clear, the Courts ought to give such interpretation as is most consonant with equity and least inconvenient. *Kerlin vs. Bull*, 1 Dallas, 178. The best exponents of the legislative mind are the words of the statute, when they are free from ambiguity, but when they are

not, we must resort to legislation on kindred subjects, the spirit of the institutions and the habits of the community, to discover the intent of the legislature.    *Commonwealth vs. Pa. Ins. Co.*, 1 Harris, 166.

According to the arguments of prisoner's counsel, for all felonies committed within *the county*, prior to the passage of said act of Congress, not prosecuted to conviction and judgment, the perpetrators would go unscathed by the penalties of the law. Now can it be presumed that Congress intended by the passage of this act to unkennel every felon in the Territory undergoing prosecution, except such as were suffering under the judgments of the Courts? We cannot so believe, and a reference to the act satisfies us that such was not the intent of Congress. The fifth section of said act provides, "that Judges of the Supreme Court in each of the Territories, or a majority of them, shall, when assembled at their respective seats of government, fix and appoint their several times and places of holding the several Courts, in their respective districts, and limit the duration therof: *Provided*, That the said Courts shall not be held at more than three places in any one Territory, and: *Provided further*, That the Judge, or Judges, holding such Courts, shall adjourn the same without day, at any time before the expiration of such terms, whenever, in his or their opinion, the further continuance thereof is not necessary." This embraces the entire legislation of Congress on the subject. By the provisions of the section, a duty is devolved upon the Judges of the Supreme Court, without, however, specifying any particular time within which the specific duty was to be performed. The performance of this duty was, we think, a *condition precedent*, and, until the assembling of the Supreme Judges, and their determination, the law was inoperative. Had the Judges been authoritatively informed, prior to the Fall terms of the Courts in 1856, of the passage of this act of Congress, it would have been incumbent on them to have assembled at the seat of government, and provide for terms of Court, in conformity with the act. The act is limited by its terms to the times and places of holding Courts.

Under the second branch of the proposition, as we are con-

sidering it, the counsel for the prisoner have urged that there was *error* in overruling the motion in arrest of judgment, on the ground that the verdict was against the law, in this, " that the prisoner was entitled to a trial in the district in which the crime was committed, which district should have been previously ascertained by law." In support of this, the counsel refer to Article VI, amendments to the Constitution of the United States. Entertaining the view which we do, upon this subject, it would be unnecessary to say, for the purposes of this case, whether the clause is operative in the state or territorial Courts. It has been decided in reference to sec. five of the amendments of the Constitution, " which would appear to stand in *pari materia* with the section under consideration," by the Supreme Court for the state of Vermont, that it applies only to cases in the United States Courts. *State vs. Keys*, 8 Vermont, 57.

The cases arising under that clause of the section which provides that no person shall be subject for the same offense, to be twice put in jeopardy for life or limb, seem to have been discussed in the state Courts, with reference to a similar clause, contained in several of the state constitutions. In some of the states, the doctrine of Justice Story, as laid down in 2 Sumner, page 43, *et seq.*, has been accepted and recognized. A doubt, however, is expressed by Judge Davis, in this case, whether the section is applicable to the state Courts, page 102, *ibid.*

In this case now before us, the indictment was found in the District Court for the county of Pierce, after the passage of the act of Congress, limiting the places of holding the Courts, to three in the Territory. The legislature, by act of 1857, defined the Judicial Districts. Pierce county was by this act, included in the Second Judicial District. By an act passed January 26, 1857, " it is provided that so far as the jurisdiction of offenses cognizable by the District Court, and the trial of criminals are concerned, each Judicial District shall constitute one county." The district was enlarged, in other words, Pierce county, for the purposes of criminal prosecutions, was enlarged so as to embrace other counties. There was no transfer of jurisdiction. The jury came from Pierce county. The prisoner was not deprived

of his right at common law, to have his case tried by a jury of the vicinage. It is the same as if the other counties forming the Judicial District had been divested of their corporate capacity and merged in the county of Pierce. It is not the case of an assumption of jurisdiction, by the courts of one county to try felonies committed in another. It is not the case of carrying the person, having committed the crime in one state, into another for trial, or into a separate and distinct district. These all operate to the exclusion of the state, district, or county in which the offense was committed; but in the case under consideration, there is no such exclusion of the county of Pierce, as would bring the case within the purview of the sixth section of the amendments to the Constitution, referred to, or that stringent rule of the common law which required that a party charged with crime, should be tried in the county in which the offense was committed.

We are therefore of the opinion, that the District Court for Pierce county, in the first instance, and the District Court for the Second Judicial District, in the second place, had full and complete jurisdiction in the premises.

Another error, it is alleged, has been suggested by the record, and has been argued with some degree of emphasis, viz: That the indictment is not framed in conformity with the statute law of Washington Territory, in this, that although the indictment, which contains but a single count, is a good indictment at common law for murder in the first degree, yet that it is not good under the statute which divides the offense, which at common law was murder in the first degree, into two separate and distinct grades—murder in the first and second degree—and provides two different punishments, and is as follows: "Every person who shall purposely and of deliberate and premeditated malice, or in the perpetration or attempt to perpetrate any rape, arson, robbery or burglary, or by administering poison, or causing the same to be administered, to kill another, every such person shall be deemed guilty of murder in the first degree, and upon conviction thereof, shall suffer death." Sec. 12, page 78, laws W. T., 1854. Section 13 of the same act provides, that,

" every person who shall, purposely and maliciously, but without deliberation and premeditation, kill another, every such person shall be deemed guilty of murder in the second degree, and upon conviction thereof, shall be imprisoned in the penitentiary," etc.

Now, it is claimed in the argument of counsel for plaintiff in error, that in framing an indictment for murder under our statute, that the offense should be charged to have been committed under the specific circumstances named in the statute, and in the terms used in the statute, so that it might be determined *by the record*, whether the offense charged be murder in the first or second degree.  If there be anything in the law constituting different grades of this offense, which would work such an innovation in the common law rule, as to require a modification of the common law form of the indictment, then this objection would be valid, and the indictment would be sufficient, under our statute.

In the case of a statute offense, unknown to the common law, it is a general rule, that the indictment must charge the offense to have been committed under the circumstances, and with the intent, mentioned in the statute, which of course contains the only appropriate definition of the crime.  *State vs. Jones*, 2 Yerg. Ten. Rep., 22; *State vs. O'Bannon*, 1 Bayley, Law Rep., 144.  But even in that case, it is said to be unnecessary to pursue the *exact* words of the statute creating the offense, if other words are used in the indictment which are equivalent, or words of a more extensive signification, and which necessarily include the words used in the statute, as when *advisedly* is substituted for *knowingly*, or *maliciously* for *willfully*, and the like.  *King vs. Fuller Bos. & Pull.*, 180; *United States vs. Bachelder*, 2 Gall. Rep., 15.

It is otherwise in indictments, for common law offenses, when the law has adopted certain technical expressions to define the offense, or to indicate the intention with which it was committed; in which case the crime must be described, or the intention must be expressed by the technical terms prescribed, and no other.

It has frequently been decided that in an indictment for murder, the terms "*murder of his malice aforethought*" are absolutely necessary in describing the crime of murder.

In the case of the *People vs. Enoch*, 13 Wendell Rep., page 173, a case most elaborately argued by counsel, passed upon by the Supreme Court, and subsequently by the appellate Court, in the opinion delivered by the Chancellor, it is laid down that in determining the question whether an "indictment should be drawn as at the common law, or should appear to be founded upon a statutory provision which is applicable to the offense, the following rules are to be observed: If the statute creates an offense, when committed under peculiar circumstances, *not necessarily included* in the original offense, punishable in a different manner from what it would have been without such circumstances, or where the statute changes the nature of the common law offense to one of a higher degree, as, where what was originally a misdemeanor, is made a felony, the indictment should be drawn in reference to the provision of the statute, creating or changing the nature of the offense, and should conclude 'against the form of the statute.' But if the statute is only declaratory of what was previously an offense at common law, without adding to or altering the punishment, it need not conclude against the form of the statute."

"Where the legislature abolishes an offense, which at the common law was a felony, or reduces it to the grade of a misdemeanor only, the case of unlawful killing by a person engaged in the act which was before a felony, will no longer be considered murder, but manslaughter merely." Such changes in the law of murder have often occurred, both in this country and in England, yet it never has been thought necessary to *change the common law form* of the indictment, to meet cases of this description, *ibid*, page 175. The court and jury in such cases immediately apply the common law principle, and the killing is adjudged to be murder or manslaughter, according to the nature and quality of the crime that the offender was perpetrating at the time the homicide was committed, *ibid*, page 176. The Chancellor, therefore, arrives at the conclusion that a common law in-

dictment for murder is proper under the provisions of the revised statutes of New York, and that a defendant cannot be convicted on such an indictment of a felonious homicide with malice aforethought, unless the evidence is such as to bring the case within the statutory definition of murder, *ibid*, page 176.

The indictment in the case of Enoch contained three counts substantially alike, except that in the first, the offense was charged to be contrary to the forms of the statute. The indictment was predicated upon the revised statutes of New York, which provides that the homicide should be murder: 1. When perpetrated from a premeditated design to effect the death of the person killed, or of any human being. 2. When perpetrated by any other act, imminently dangerous to others, and evidencing a depraved mind, regardless of human life, although without premeditated design to effect the death of any particular individual. 3. When perpetrated without any design to effect death, by a person engaged in the commission of any felony, Rev. Stat. New York, 656, sec. 5.

In the indictment in that case, the form is the same as the case now under consideration, except in the number of the counts. The offense was charged in the common law form to have been committed *feloniously, willfully*, and of *malice aforethought*, instead of charging it to have been perpetrated from a " premeditated design to effect the death of the person killed," which are the words of the statute, and the indictment was held to be good, after being subjected to the ordeal of two courts of review.

Pennsylvania, in 1794, passed an act materially modifying the rules of the common law in reference to felonious homicide. In this act, among other qualifications, it is provided " that all kinds of willful, deliberate, and premeditated killing shall be murder in the first degree; also, all killing committed in the perpetration or the attempt to perpetrate any arson, rape, robbery, or burglary;" and the jury trying the case, shall, if they find such person guilty thereof, ascertain in their verdict whether it be murder in the first or second degree. McKinny's Digest Penn. Stat. 658.

In Virginia there is also a similar statute, which, after providing for murder perpetrated by means of poison, etc., adds, "or by any other kind of willful, deliberate and premeditated killing," and then follows as in the Pennsylvania statute.

It has been held under the Pennsylvania statute, that it is not necessary that the indictment should describe the offense, so as to show whether it be murder in the first or second degree, *White vs. Commonwealth*, 6 Bin. 179.

Nor is it necessary to describe it as willful, deliberate and premeditated, as expressed in the act of assembly, *Commonwealth vs. Joyce, et al.*, cited in 6 Bin. 183.

Nor is it necessary to set forth that it was perpetrated in the actual or attempted arson, rape, burglary, or robbery, *Commonwealth vs. Flannagan*, 7 W. & S., 415.

In Virginia it is necessary that the indictment should charge the offense as murder in the first degree, *Wicks vs. Commonwealth*, 2 Virg. cases, 387; *Commonwealth vs. Miller*, 1 Virg. cases, 310.

Nor is it necessary to use that description which, according to the statute, is murder in the first degree, *ibid*.

Other authorities might be brought in support of these, but we think it unnecessary.

The statutes of Pennsylvania and Virginia provide that the jury are to determine, from the evidence under an indictment for murder in the first degree, whether the homicide be murder in the first or second degree. A like duty devolves upon them under the provisions of our statutes, laws W. T., sec. 122, page 120, sess. 1854.

It is enacted that, "upon an indictment for an offense, consisting of different degrees, the jury may find the defendant not guilty of the degree charged in the indictment, and guilty of any degree inferior thereto, or of an attempt to commit the offense." We are therefore of the opinion, that in this particular, there is no error.

Fifth assignment of error: "The jury were not duly elect-
4

ed, tried, and sworn, according to law, to try the issue joined, in this: The oath required by law was not administered to them." Laws of W. T., page 119, sec. 107, sess. 1854, provides "that the jury shall be sworn, or affirmed, to well and truly try, and true deliverance make, between the Territory and the prisoner at the bar whom they shall have in charge, according to the evidence."

The record exhibits the following entry: "And thereupon comes a jury of twelve good and lawful men, duly elected, tried, empanneled and sworn, to-wit," etc. The form of oath of jurors is usually prescribed by statute. There is nothing in our act requiring the oath administered to be spread upon the record. If it appear affirmatively that the jury were lawfully sworn, it will be sufficient. In this case, the record affirms that the jury were *duly sworn*, that is, legally, lawfully sworn. We think this sufficiently appears from the record, and can work no prejudice to the prisoner.

It is claimed that the verdict in this case should be arrested as being contrary to law. 1. That the jury do not find the degree of the offense, but find, as it appears by the record, in the words following, namely: "On their oaths do say, we the jury, find the defendant, Leschi, guilty, as charged in the indictment, and that he suffer death."

It is claimed that the offense being of different degrees, the jury should have found specifically that the defendant was guilty of murder in the first degree, in order to warrant judgment of death.

The indictment in this case is drawn in the common law form, containing but one count, and that for murder in the first degree. The practice, both in England and this country, has always been, when there has been a general verdict of guilty, on an indictment containing several counts, some bad and some good, to pass judgment on the counts that are good, on the presumption that it was to them the verdict of the jury attached, and on the same reasoning, where one of two counts is bad, and the defendant is found guilty and sentenced generally, the presumption of law is, that the Court awarded sentence on the good count, and the sentence is not erroneous if it is warranted by

the law applicable to the offense charged in that count, Wharton crim. law, 3d edition, page 976. In the case of *State vs. Montague*, 2 McCord, 257, it is said that where there are several counts, prescribing offenses to which there are several *punishments*, a general verdict of guilty is bad. Where an indictment charges in one count, the breaking and entering a building with intent to steal, and in another count a stealing in the same building on the same day, and the defendant is found guilty *generally*, the sentence, whether that which is proper for burglary only, or for burglary and larceny also, cannot be reversed on error, because the record does not show whether one offense only, or two were proved on the trial, and as this must be known by the Judge who tried the case, the sentence will be presumed to be according to the law that was applicable to the facts proved. *Kite vs. Com.*, 2 Metcalf, 581.

In Pennsylvania it has been held that, where the indictment charged the prisoner with perpetrating the crime by means of poison, and the jury found the prisoner "guilty in manner and form as stated in the indictment," without specifying the degree of the offense, there being different punishments provided by the statute, the Court will adjudge the offense to be murder in the first degree, and will pronounce sentence of death, *Commonwealth vs. Earles*, Lewis, Pres. Lycoming, Oyer and Ter., 1836, 1 Wharton, 525.

In a later case decided by the same Judge, in the same Court, in 1838, United States C. L., page 398, it was ruled that, when the indictment charged the prisoner with perpetrating the murder "by lying in wait" on or near a certain highway, and the jury find him guilty, without stating the degree, the Court will adjudge it murder in the first degree, and pass sentence of death.

The indictment in this case, sets forth all the facts necessary to constitute the offense murder in the first degree. The statute makes it incumbent on the jury, when they find the defendant guilty, to state the punishment to be inflicted. The jury returned a verdict of guilty, as charged in the indictment, and that he suffer death.

We have not been able to find a single authority which would go to show that this verdict, under this indictment, is wanting in any of the specific qualities required by law. Had the jury returned a general verdict, and found a different punishment from that prescribed for the offense, as charged in the indictment, it would have furnished sufficient cause for the arrest of judgment. The jury, however, find the prisoner guilty as charged in the indictment—that charge is for murder in the first degree, and they have found the punishment corresponding to the facts charged, as provided by our statute.

The indictment itself is framed in accordance with the precedents furnished the profession in the United States C. L. We think there is no sufficient error here which would warrant us in disturbing the judgment.

The right of the prisoner to a trial in the district in which the crime was committed, which shall have been previously ascertained by law, is the second proposition urged by the counsel for the prisoner, in arrest of judgment. Having discussed this in connection with the proposition contained in the first assignment of errors, we shall not add anything.

It is alleged for error, that the verdict of the jury is contrary to the evidence in the case.

We have examined the evidence as presented by the record, and which has been made a part of the same, and in so doing, we have been desirous of giving the prisoner the benefit of every reasonable doubt. The testimony of Rabbeson, is clear and positive against the prisoner; he speaks with certainty of the fact of Leschi's presence. He says he has known him for ten years, and gives a plain narrative of the whole transaction. With reference to many of the material facts, he is fully sustained by the witness principally relied upon by the prisoner, except that he did not see or recognize Leschi at the place where the shooting took place. An attempt was made on the trial to discredit the witness, Rabbeson, but it was unsuccessful. It is well settled as a rule of law, that in all cases jurors are judges of the facts, and emphatically so, in criminal cases, and unless the

evidence greatly preponderates against the verdict in criminal cases, Courts are exceedingly cautious in interfering with the verdict of a jury.

In this case, the prisoner has already had the benefit of a review of the evidence, by the Judge who tried the case below, who had, not only the evidence before him, but who had an opportunity of observing the deportment of the witnesses on the stand. We are of the opinion that there is no such preponderance of evidence against this verdict as would warrant us in interfering.

But it is claimed that a new trial should have been granted, on the ground of newly discovered evidence, and which he could not have discovered with reasonable diligence, and produced at the trial.

The counsel in this case on the first trial, had every opportunity to determine the relevancy of the testimony against the prisoner, and, as the fact which they wish to establish, was not exclusively within the knowledge of the witness, whose testimony they desire, but might have been shown by others in the neighborhood, we are inclined to doubt whether there has been exercise of that reasonable diligence which should be required. There is, however, another view of this, which supersedes the necessity of determining this point. It is laid down as a rule of law, that, when a motion for a new trial is considered, the Court must judge, not only of the competency, but of the effect of evidence. If, with the newly discovered evidence before them, the jury ought not to come to the same conclusion, then a new trial may be granted, otherwise, they are bound to refuse the application. In the case of *Lewellen vs. Parker*, 4 Harrison's Ohio Rep., 5; *Ludlow vs. Parker*, 4 Hammond, 5, it is ruled that, in considering the motion, the Court will not inquire whether taking the newly discovered testimony in connection with that exhibited on the trial, a jury might be induced to give a different verdict, but whether the legitimate effect of such evidence would require a different verdict. In the case of *Martin vs. Marvin*, D. C. Phil'a, 9 Leg. Int. 2, it was ruled in the same

way.   We are satisfied from an examination of the affidavit on which this application was grounded, that should a new trial be granted by this Court, the legitimate effect of the whole evidence would not require a jury to find a different verdict.

It is alleged that the Court erred in failing to charge the jury that they could not find the prisoner guilty of an offense less than that of murder in the first degree.

There is nothing in the record going to show what the charge of the Court was.   But it is said that the Court erred in remarking to the jury, after the argument of counsel, " that they had now heard the arguments of counsel, and the charge of the Court, and that the closing counsel had, in some degree, gone outside the case; that all the jury had to decide upon was the evidence given upon the trial—the law they were to take from the Court."   We see nothing improper here.   It is always the duty of the Court to restrain counsel, and keep them within proper limits.

It is alleged, that it does not sufficiently appear by the record that the defendant was present at the trial when the verdict was rendered, nor yet when sentence of death was passed.   It appears from the record that the jury, naming them, on their oaths do say, "we the jury, do find the defendant, Leschi, guilty as charged in the indictment, and that he suffer death; and thereupon the defendant gives notice for a motion for a new trial."   The sentence as stated in the record, "and the defendant saying nothing why judgment should not be pronounced against him, it is considered by the Court now here, that the defendant be taken to Steilacoom, in Pierce county, on Wednesday the tenth day of June, in the year 1857, and there, on said day, between the hours of 10 o'clock in the forenoon and 4 o'clock in the afternoon, be hung by the neck until he be dead," We think it sufficiently appears that the defendant was not only present when the verdict was rendered against him, but that he was present when the sentence was pronounced.   We are, therefore, of the opinion that the judgment in this case should be affirmed.