CHARLES MURPHY, PLAINTIFF IN ERROR, V. THE STATE OF NEBRASKA, DEFENDANT IN ERROR.

1. **Practice in Criminal Cases:** CHALLENGE OF JURORS. Under the provisions of the criminal code it is not error to permit a juror to sit in a cause who, although on oath, says "he had an opinion;" also says "he could render a fair and impartial verdict upon the evidence and the law;" the record disclosing that the opinion was hypothetical and not one calculated to bias the juror.

2. **Verdict:** CONFLICTING TESTIMONY. Where the testimony is conflicting, and is fairly submitted to a jury, a new trial will not be granted if the testimony is sufficient to sustain the verdict.

3. **Testimony:** JURY ALONE TO JUDGE OF WEIGHT. When conflicting testimony is submitted to a jury under proper instructions, the jurors alone are the judges of the weight of the testimony of the witnesses, and their verdict will not be set aside on that ground alone. And it is not the province of the court to establish any arbitrary standard by which they shall weigh or measure the testimony of the witnesses.

4. **Instructions:** HOW CONSIDERED. The true meaning and effect of instructions are not to be determined by the selection of detached parts thereof, but by considering all that is said on each particular subject or branch of the case. *St. Louis v. The State*, 8 Neb., 406.

ERROR to the district court for Lancaster county. Tried below before POUND, J.

*Lamb, Ricketts & Wilson*, for plaintiff in error.

*Isaac Powers, Jr., Attorney General,* and *Brown & Ryan Brothers*, for the State.

REESE, J.

The plaintiff in error was indicted and tried in the district court of Lancaster county upon the charge of having committed the crime of rape upon the person of Mrs. Julia

Abbott.    The trial resulted in a conviction, and he brings
the case into this court by petition in error.

The first question presented by him is, whether the dis-
trict court erred in overruling his challenge of the juror
J. B. Taylor.    The testimony of this juror on his *voir dire*
examination was, in substance, that he had heard of the
case, and if what he had heard was true he had formed an
opinion; that the source of his information was what the
neighbors of a family by the name of Abbott had said to
his wife, and she had told him; that the parties with whom
his wife had talked were none of them witnesses in the
case, and that he thought what he had heard would influ-
ence his mind a little; that it would take evidence to re-
move his opinion.    To the inquiry of the court the juror
stated that what he had heard was rumor and not by con-
versation with any person purporting to know the facts in
the case; that it had come to him in a roundabout way,
and that he had no opinion except upon the hypothesis that
what he had heard was true, and that he thought he would
be able to render a fair and impartial verdict upon the evi-
dence that should be adduced on the trial and the law as
given by the court, notwithstanding any opinion he might
have formed.

In *Fillion v. The State*, 5 Neb., 352, it is said that, "To
render a juror incompetent it must appear that the opinion
formed or expressed by him was in reference to the inno-
cence or guilt of the accused."    The juror stated that he
had heard of this case, and that if what he had heard was
true he had formed an opinion, but there is no intimation
in all the examination that the opinion of which he testi-
fied was in reference to the guilt or innocence of the plain-
tiff in error.    The rule laid down in the case above referred
to is decisive of this question.    But to pursue the question
further, section 468 of the criminal code provides as the
second cause for challenge: "That he has formed or ex-
pressed an opinion as to the guilt or innocence of the ac-

cused; *Provided*, That if a juror shall state that he has formed or expressed an opinion as to the guilt or innocence of the accused, the court shall thereupon proceed to examine, on oath, such juror as to the ground of such opinion; and if it shall appear to have been founded upon reading newspaper statements, communications, comments, or reports, or upon rumor or hearsay, and not upon conversations with witnesses of the transactions, or reading reports of their testimony, or hearing them testify, and the juror shall say, upon oath, that he feels able, notwithstanding such opinion, to render an impartial verdict upon the law and the evidence, the court, if satisfied that such juror is impartial and will render such verdict, may, in its discretion, admit such juror as competent to serve in such case." In accordance with the provisions of this section, the trial court examined the proposed juror and found, correctly, as we think, that he was a competent juror. "It often happens that a juror may suppose that his belief in the existence of a certain fact will constitute an opinion, when in truth it may be necessary to establish a great many other facts before the guilt or innocence of the party could be established." *Curry v. The State*, 5 Neb., 416. Such was evidently the condition of this juror. He had an impression, but such a one as any intelligent person will have who hears, however remotely, a statement of the supposed facts of a case, and if upon the trial or upon a direct examination of any kind the facts should differ from those at first presented, the mind is at once freed from its first impression and adopts that which is the result of a careful investigation. It should be further remembered that all the opinion entertained by this juror was hypothetical. In *Curry v. The State, supra*, 415, it is said, quoting from *McCausland v. Crawford*, 1 Yeates, 378: "Prejudging and giving our opinion on a statement of certain facts are very different things. The first implies a strong disposition to favor one side or the other; a determination to find

one way, let the evidence be what it may.    The last involves the truth of certain facts and propositions in the sentiments delivered; and impressions thus made may be effaced by the production of other evidence.    The first renders the person incompetent as a juror; the second is an opinion only binding or influencing the juror provided the case should turn out as represented, and this is a hypothetical opinion."    Such an opinion does not disqualify a juror. The evidence does not tend to show that the juror had any fixed and definite opinion as to the guilt or innocence of the plaintiff in error.    Such an opinion is necessary to sustain a challenge.    Id., 417.    Upon inquiry by the court the juror showed himself competent, under the statute, to sit in the case.

The next objection made by the plaintiff in error is, that the verdict is not supported by sufficient evidence; that the testimony of the prosecutrix, if true, does not establish the commission of the crime of rape, and that her testimony is not corroborated sufficiently to justify the finding of the verdict returned by the jury.

The evidence is conflicting and somewhat voluminous, and a critical review of it in this opinion cannot be made, but we think it is sufficient to sustain the verdict.    The testimony of the prosecutrix appears to have been candidly and carefully given.    Her statement of the case was, substantially, that she was at work in her room packing her trunk preparatory to her trip to her friends in Burlington, Iowa, which was to be made the next day; while so making her preparation, the plaintiff in error came into her room, her husband being absent, and made indecent proposals to her; she resented his overtures, and ordered him to leave the room; she was seventeen years of age and weighed about one hundred and twenty pounds, and until she came to this country from Germany, three years before, she had never seen a colored man, and that she had never become accustomed to them; the plaintiff in error was a colored

man, strong and athletic; when he first came into her room she was greatly frightened; he seized her, threatened her, told her if she screamed or hallooed he would kill her; she was scared and could do nothing; he took her by the arms, threw her down on the floor, and forcibly had connection with her without her consent; the plaintiff in error was at that time working for her husband, and had not prior to that day spent so much time in and about the house, and had never been in her room before; and that at the time of the commission of the offense there was no other person about the house; she was married to her husband on the fourteenth of June, and this occurred on the twenty-fourth of the following July.

The plaintiff in error denies a part of the facts testified to by her, but admits the sexual intercourse at the time and place and under the circumstances described by her; the only material difference in their testimony being the assertion by him that the intercourse was with her consent.

While it is true as claimed by the plaintiff in error that no forced or unnatural construction should be put upon the evidence of the prosecutrix in order to sustain a conviction, it being natural that the prosecutrix should seek to exonerate herself by throwing all the blame upon the plaintiff in error, yet the jury were justified in giving to her testimony a natural, reasonable construction, and to give it such weight in comparison with the testimony of the plaintiff in error as they thought right. It is true the father of her husband was in an adjacent field at work, and she made no outcry and no complaint to her husband on his return home that evening, and that she allowed the plaintiff in error to drive her to the railroad station the next morning, but it is also true, as testified by her and shown by the circumstances in the case, that the friendship of the father-in-law was at that time very questionable as she well knew, and that both the husband and father-in-law had given her to understand that she must return to

Burlington.   That neither were friendly to her.   That the husband had informed her on the morning of her departure that his father would take her to the train, and after his departure the father-in-law put the trunk into the wagon, and told the plaintiff in error to take her.   That the plaintiff in error had, immediately after the intercourse, made threats to her as to what the result would be if she informed on him.   That she had no friend or adviser nearer than Burlington, and no one to whom she could apply for assistance of any kind, and that she was without means—her husband furnishing her with a ticket to the end of her journey, but no money.   It is difficult to see what other course was left to her to pursue than the one she adopted.   Upon her arrival at Burlington, she immediately made complaint to those with whom she was acquainted, and the prosecution followed soon after.

The questions of fact are very much narrowed by the testimony of the plaintiff in error, who simply denies the *force* by which the intercourse was had.   He admits the commission of a crime, being a married man, but says it was not *the* crime with which he is charged, although one involving an equal degree of moral turpitude.   The prosecutrix denies being guilty of any crime, and from all the facts and circumstances in the case, we think the jury were warranted in adopting the theory of the case as presented by her testimony.

It is contended by the plaintiff in error that the testimony of the physicians shows that a rape upon the prosecutrix would have been necessarily followed by an abortion, she being at that time pregnant of from four to five weeks duration.   It is only necessary to say that the testimony on that branch of the case was conflicting and was fairly submitted to the jury, and their verdict upon that point must be final.

The plaintiff in error requested the court to instruct the jury as follows:

"You are instructed that the evidence of the defendant himself is not to be disregarded because he is on trial for a crime—a defendant in a criminal prosecution is ordinarily entitled to the same credit as a party in an important civil suit." This instruction was refused, and we think properly so. While it is true that a defendant's testimony is not to be arbitrarily disregarded by the jury, yet it is equally true that no standard by which to weigh or measure the testimony of witnesses can be established by the court. The jury were instructed as to the legal rules to be observed in weighing his testimony, and by those instructions the plaintiff in error was placed on the same level with the prosecutrix and other witnesses in the case. Of this the plaintiff in error cannot complain. It would have been proper for the court to have instructed the jury that in weighing his testimony they should consider his interest in the result of the trial. *St. Louis v. The State*, 8 Neb., 418.

Objection is made to the eleventh instruction given by the court on request of the state. The objectionable part is in this language: "Starting, then, with the presumption of innocence, have the people convinced you that the defendant is guilty of the crime charged? If they have, your verdict will of course be, guilty." It is claimed that this permitted the jury to find him guilty on a mere preponderance of evidence. Without further reference to this language, it is enough to say that the jury were fully charged by the court, on its own motion, as to the degree of certainty required before a conviction could be had, the doctrine of "reasonable doubt" being fully and clearly explained. The whole of the instructions must be construed together. "The true meaning and effect of a charge to a jury cannot be ascertained by selecting a sentence here and a line or a word there, and looking to them alone, but all that is said on each particular subject or branch of the case must be looked to in order to reach a just conclusion respecting it." *St. Louis v. The State*, 8 Neb., 418. This

B. & M. R. R. Co. v. Chicago Lumber Co.

will sufficiently dispose of all the objections to the instructions given upon the trial.    The objections are sufficiently met by the instructions when taken as a whole.

We have tried to give the record in this case a careful examination, and while the testimony on the question of the consent of the prosecutrix is conflicting, yet the case has been fairly submitted to the jury, and there is sufficient to support the verdict.    In *Palmer v. The People*, 4 Neb., 76, it is said, "So much depends on the manner and appearance of a witness while giving his testimony that the question of his credibility must be left to the jury, and a reviewing court will not, in such a case, say from an examination of the testimony that the verdict is erroneous."

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.