J-S50009-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| ALPHONSO SANDERS | |
| Appellant | No. 2200 MDA 2015 |

Appeal from the PCRA Order November 18, 2015
in the Court of Common Pleas of Lancaster County Criminal Division
at No(s): CP-36-CR-0003826-1999

BEFORE: MUNDY, STABILE, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED JULY 21, 2016**

Appellant, Alphonso Sanders, appeals from the order dismissing his second Post Conviction Relief Act[1] ("PCRA") petition. Appellant contends that the PCRA court erred by holding that the exclusion of the testimony and evidence regarding the victim's hair would not have changed the verdict. We affirm.

We adopt the facts and procedural history set forth in the PCRA court's opinion. *See* PCRA Ct. Op., 11/18/15, at 1-2. We also reproduce the facts, as set forth by this Court's prior opinion:

> Appellant, a resident of Columbus, New Jersey, was employed by Williams Telecommunications (Williams), a subcontractor for PECO. For several months prior to the victim's death, Appellant was engaged in an extramarital

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

affair with the victim. Appellant was often observed providing transportation to the victim in the van provided to him by Williams, and the victim introduced Appellant to others as her boyfriend. Appellant and the victim engaged in sexual intercourse on a number of occasions throughout their relationship. Also, Appellant provided monetary support to the victim, including payments for hotel rooms for the victim and a trip to Florida.

On April 28, 1999, four days after the discovery of the victim's body, Pennsylvania State Police established a time to interview Appellant regarding the victim's death at the PECO headquarters in Philadelphia. When Appellant did not appear at the scheduled time, the troopers proceeded to his home in New Jersey and waited for him to arrive. The troopers observed Appellant, in his Williams van, slow down as he approached his driveway, but then pass directly by it. Accordingly, the troopers followed Appellant to an intersection where he failed to obey a stop sign. Thereafter, the troopers activated their vehicle's alternating headlights to alert Appellant to pull over. Instead of heeding to the implicit directive of the police, Appellant initiated a chase in which his vehicle at times exceeded 70 miles per hour. Nearly five miles from his residence, police finally apprehended Appellant. In the midst of the pursuit, Appellant discarded a black leather gun holster in a sewer drain; however, the holster was recovered by police.

After being apprehended, Appellant stated to police that he had been at home on April 23, 1999, from 9:00 PM until the next morning, and Appellant's wife testified at trial that he had arrived at home at 8:45 PM. However, evidence of Appellant's pager being called from his home phone number at 11:05 PM that evening belied the alibi statements. Appellant's alibi was also discredited by Detective Sergeant Edward Verbeke, who testified that he had overheard Appellant, while in custody, tell his wife that she had to tell "them" that he was at home on the night of April 23, 1999. Moreover, a dispatcher from Williams paged Appellant four times between 7:45 PM and 9:00 PM that evening, to which Appellant did not respond. According to the dispatcher, Appellant had never failed to respond to a page prior to April 23, 1999. The last known

location of Appellant on April 23, 1999 was the PECO Plymouth facility at 6:45 PM.

As of July 24, 1999, a Sig Sauer P226 handgun was registered to Appellant. Appellant stated to police that he purchased the handgun in 1990, but then sold it at a bar to an unknown person during the summer of 1998. The bullet fragments found in the victims body were consistent with a number of handguns, including a Sig Sauer P226. Also, the holster discarded by Appellant on April 28, 1999 was a type which could be used with the handgun.

Appellant stated to police that he was familiar with the Peach Bottom Nuclear Power Plant (Peach Bottom) because he visited it monthly in the scope of his employment with Williams. Peach Bottom is located directly across the Susquehanna River from Muddy Run Park and owned by PECO. Appellant worked at Peach Bottom on the morning of April 20, 1999, four days before the victim's body was found.

A search of the Williams van operated by Appellant yielded a pamphlet from Muddy Run Park, a cooler, a nylon bag, a wallet in the nylon bag, and a blanket. The victim's family members identified the cooler, the nylon bag, and the wallet as possessions of the victim. The wallet was further identified as one which the victim was using immediately prior to her death. The victim's mother testified that she owned the blanket which was found. Additionally, traces of [the] victim's blood **and hair**, established through a DNA analysis,[2] were found in the cargo area of the van.

Appellant was subsequently charged with and tried for first degree murder. Following a 13 day trial, which

---

[2] We note that DNA analysis established that the blood belonged to the victim. N.T. Trial, 7/20/00, at 1656. DNA analysis was **not** used on the hair, as such testing was not routine at that time. *Id.* at 1735-36 (listing items analyzed for DNA); R.R. at 1a (noting mitochondrial DNA testing of hair became routine after December 31, 1999, which was after the date of the forensic examinations in this case).

included the testimony of 67 witnesses, the jury found Appellant guilty.

***Commonwealth v. Sanders***, 1750 MDA 2000, at 1-6 (Pa. Super. May 22, 2001) (emphasis added and citations omitted).

We add that at trial, a Federal Bureau of Investigation forensic examiner testified and submitted a report comparing the victim's hair to hair recovered from the interior of Appellant's van. In pertinent part, the examiner testified as follows on direct examination:

> You know, if I can compare that questioned hair to a known sample and compare all of those microscopic characteristics from root all the way to the tip, I can determine whether or not they exhibit the same microscopic characteristics. **If that's the case, I can conclude that the hair is consistent with coming from that person.**
>
> Now, hairs are not a means of absolute personal identification. It's not a fingerprint. **But it's rare for me to see two people's hair samples that I cannot distinguish.**
>
> *   *   *
>
> [District attorney:] Now, the opinions that you've given as far as the comparison and inclusion of [the victim's] hairs that you've testified to this morning, **are they to a reasonable degree of scientific certainty?**
>
> A **Yes.**

N.T. Trial, 7/21/00, at 1848, 1854 (emphasis added).[3]

_____

[3] As noted *infra*, the United States Department of Justice ("DOJ") concluded the emphasized testimony was erroneous. We acknowledge, however, that

Appellant was sentenced to life imprisonment. On direct appeal, Appellant challenged, *inter alia*, the sufficiency of the evidence. This Court rejected Appellant's claim, reasoning as follows:

> Appellant and the victim were engaged in an extramarital sexual relationship. Statements and evidence regarding Appellant's whereabouts on the night of April 23, 1999 and Appellant's contacts with the victim prior to that night were inconsistent, making the veracity of his alibi dubious. Due to Appellant's employment, he was familiar with the remote area where the victim's body was found. Traces of the victim's blood were found in Appellant's Williams van, along with personal items of the victim, including her wallet, and a brochure from Muddy Run Park. A handgun, consistent with the one used to kill the victim, was registered to Appellant, and he attempted to dispose of a holster, also consistent with the gun, when encountered by the police.
>
> Additionally, Appellant's flight from police on April 28, 1999 may be considered by the jury to show Appellant's consciousness of guilt in the slaying. . . .
>
> In the case at bar, Appellant noticed the unmarked police vehicles near his home and, nevertheless, continued past. He then ran a stop sign and led police, who had activated their lights, on a chase for nearly five miles. In the midst of his flight from police, Appellant attempted to secret a gun holster, which connected him to the victim's death.

*Id.* at 8-9. This Court affirmed on direct appeal, and our Supreme Court denied Appellant's petition for allowance of appeal on September 21, 2001.

***Commonwealth v. Sanders***, 786 A.2d 987 (Pa. Sept. 21, 2001) (table).

---

a portion of the emphasized "testimony" was actually the district attorney's question. N.T., 7/21/00, at 1854.

Appellant filed a timely first PCRA petition, which the PCRA court denied. This Court affirmed on May 24, 2005, and our Supreme Court denied Appellant's petition for allowance of appeal on November 30, 2015. *See Commonwealth v. Sanders*, 1106 MDA 2004 (Pa. Super. May 24, 2005), *aff'd*, 889 A.2d 1215 (Pa. Nov. 30, 2015) (table).

On September 15, 2014, DOJ counsel sent a letter to the district attorney for Lancaster County. The letter informed the Commonwealth that the report and testimony of the FBI forensic examiner regarding the victim's hair was inaccurate. Attached to the letter was, *inter alia*, a July 18, 2013 report stating the examiner made inappropriate statements falling within two categories of error:

> The examiner assigned to the positive association a statistical weight or probability or provided a likelihood that the questioned hair originated from a particular source, or an opinion as to the likelihood or rareness of the positive association that could lead the jury to believe that valid statistical weight can be assigned to a microscopic hair association. This type of testimony exceeds the limit of the science.
>
> The examiner cites the number of cases or hair analyses worked in the lab and the number of samples from different individuals that could not be distinguished from one another as a predictive value to bolster the conclusion that a hair belongs to a specific individual. This type of testimony exceeds the limits of the science.

R.R. at 5a. The DOJ forwarded a copy of the letter and exhibits to Appellant's trial counsel, the National Association of Criminal Defense

Attorneys, and the Innocence Project. R.R. at 3b. On November 11, 2014, Appellant's trial counsel forwarded the DOJ letter to Appellant. R.R. at 7a.

On January 9, 2015,[4] Appellant, *pro se*, filed a PCRA petition attaching trial counsel's November 11, 2014 letter. The PCRA court appointed counsel, who filed an amended PCRA petition that attached, *inter alia*, all of the above-referenced DOJ correspondence. Appellant's counsel's brief also cited testimony not referenced in the DOJ correspondence and contended that testimony was similarly erroneous:

> 1. Two hairs scraped from the blanket were consistent with head hairs removed from the victim [citing N.T. Trial at 1852];
>
> 2. A pubic hair originating from a Caucasian person was found on the blanket ([the victim] was a Caucasian) [citing N.T. Trial at 1862];
>
> 3. A head hair scraped from the blanket [recovered from the interior rear of Appellant's van] was observed to contain a red substance [citing N.T. Trial at 1853]. The hair was sent to [a different forensic examiner, whose testimony is not at issue,] who identified the substance as blood, although not necessarily human [citing N.T. Trial at 1642].

---

[4] ***See generally Commonwealth v. Wilson***, 911 A.2d 942, 944 n.2 (Pa. Super. 2006) (discussing prisoner mailbox rule). The PCRA court docketed Appellant's petition on January 14, 2015. The Commonwealth does not challenge whether the PCRA court had jurisdiction over Appellant's PCRA petition. PCRA Ct. Op. at 5 n.5. Upon review, we agree. ***See generally*** 42 Pa.C.S. § 9545(b)(2) (stating petition should be filed within sixty days of date claim could have been presented).

Brief of Appellant Urging Post-Conviction Relief, 6/30/15, at 2.[5] The parties "agreed an evidentiary hearing was unnecessary." PCRA Ct. Op. at 2. On November 18, 2015, the PCRA court denied Appellant's second PCRA petition. Appellant timely appealed and timely filed a court-ordered Pa.R.A.P. 1925(b) statement.

The PCRA court filed a Rule 1925(a) opinion citing the four-factor after-discovered evidence test:

> To obtain relief based on a claim of after discovered exculpatory evidence, the defendant must prove that the evidence (1) could not have been obtained prior to the conclusion of trial by the exercise of due diligence, (2) is not merely corroborative or cumulative, (3) will not be used solely to impeach the credibility of a witness, and (4) would likely result in a different verdict if a new trial were granted. **Commonwealth v. Foreman**, 55 A.3d 532, 537 (Pa. Super. 2012) (**citing Commonwealth v. Pagan**, 597 Pa. 69, 106, 950 A.2d 270, 292 (2008)). The defendant must show by a preponderance of the evidence that each of these factors has been met in order for a new trial to be warranted. **Foreman**, 55 A.3d at 537 (citations omitted).

PCRA Ct. Op. at 4.

Prior to extensively summarizing the evidence, the PCRA court opined as follows:

> Moreover, [Appellant] in his brief exaggerates the significance of [the forensic examiner's] testimony. Even if it were disregarded in its entirety, there is no reasonable basis to conclude that the absence of his testimony would result in a different verdict if a new trial were granted.

---

[5] Appellant's brief also quoted other testimony not directly addressed by the PCRA court in its opinion.

> Excluding jury selection, [Appellant's] trial lasted 13 days. The Commonwealth presented evidence from 60 witnesses, excluding [the forensic examiner at issue], and introduced 212 exhibits. While largely circumstantial, this evidence was nonetheless **more than sufficient** to allow the jury to find Appellant guilty of murder in the first degree beyond a reasonable doubt.

*Id.* at 7 (emphasis added). After summarizing the evidence, the PCRA court concluded, "Given all of the evidence presented, direct and circumstantial, [Appellant] has not proven that the absence of the microscopic hair analysis **would have resulted in a different verdict**." *Id.* at 11 (emphasis added).

Appellant raises the following issue:

> Did the PCRA Court err and/or abuse its[] discretion in denying relief pursuant to § 9543(a)(2)(vi) by finding that the exclusion of Oien's[, *i.e.*, the forensic examiner,] testimony and all the inferences and arguments therefrom would not have changed the outcome of Appellant's trial?

Appellant's Brief at 4.

Appellant contends that after excluding the examiner's testimony, there was insufficient testimony to sustain his conviction. He argues that the PCRA court erred by conducting a sufficiency analysis and should have instead viewed the record "from the perspective of [sic] juror in a new trial— with the Commonwealth bearing the burden of overcoming the Appellant's presumption of innocence beyond a reasonable doubt."[6] *Id.* at 14-15.

---

[6] Appellant cites no legal authority for this proposition.

Appellant then exhaustively sets forth testimony and evidence that in his view establishes reasonable doubt.

The Commonwealth counters that the disputed testimony was minimally inculpatory. Commonwealth's Brief at 19. It denied that the PCRA court viewed the record in the light most favorable to the Commonwealth. *Id.* at 20-21. The Commonwealth asserts that the PCRA court "viewed the evidence through the eyes of a hypothetical jury" and was ideally suited for the role, as the court had the opportunity to weigh the evidence presented. *Id.* at 21. Alternatively, the Commonwealth insists that regardless of how the record is viewed, the evidence against Appellant was overwhelming. *Id.* The Commonwealth contends it established motive opportunity, and underscores Appellant's behavior prior to and after the victim's death, including the police chase. *Id.* at 21-22. We conclude Appellant is not entitled to relief.

"On appeal from the denial of PCRA relief, our standard and scope of review is limited to determining whether the PCRA court's findings are supported by the record and without legal error." *Commonwealth v. Abu-Jamal*, 941 A.2d 1263, 1267 (Pa. 2008) (citation omitted). The PCRA provides that a petitioner is entitled to relief if the conviction resulted from the "unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S. § 9543(a)(2)(vi).

> To obtain relief based upon newly-discovered evidence under the PCRA, Appellant must establish that: (1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict.

*Commonwealth v. Washington*, 927 A.2d 586, 595-96 (Pa. 2007) (citing

*Commonwealth v. D'Amato*, 856 A.2d 806, 823 (Pa. 2004), and

*Commonwealth v. Abu–Jamal*, 720 A.2d 79, 94 (Pa. 1998)).[7]

Initially, we assume that the DOJ correspondence qualifies as "exculpatory" evidence. *See* 42 Pa.C.S. § 9543(a)(2)(vi). We acknowledge that the PCRA court, somewhat inartfully, suggested that the record was "more than sufficient" to permit a jury to find Appellant guilty. *See* PCRA Ct. Op. at 7. Preceding that phrase, however, the PCRA court held "there is no reasonable basis to conclude that the absence of [the examiner's] testimony would result in a different verdict if a new trial were granted." *Id.*

---

[7] The language can be traced to *Ludlow's Heirs' Lessee v. Park*, 4 Ohio 5, 44 (1829) ("In considering the motion, the court will not inquire, whether, taking the newly discovered evidence in connection with that exhibited on the trial, a jury might be induced to give a different verdict, but whether the legitimate effect of such evidence would be to require a different verdict."), which was first cited by our Supreme Court in *Commonwealth v. Flanagan*, 7 Watts & Serg. 415, 424 (Pa. 1844) (stating, "And in *Lewellen v. Parker* [sic], (4 Har. O. R. 5), it is ruled that in considering the motion, the court will not inquire whether, taking the newly discovered testimony in connection with that exhibited on the trial, a jury **might** be induced to give a different verdict; but whether the legitimate effect of such evidence would **require** a different verdict."). *See also Commonwealth v. Carter*, 116 A. 409, 410 (Pa. 1922).

The PCRA court reinforced that holding at the end of its decision by concluding Appellant "had not proven that the absence of the microscopic hair analysis **would have resulted in a different verdict**." *See id.* at 11. In conjunction with the PCRA court's recitation of the four-factor after-discovered evidence test, *id.* at 4, we conclude the PCRA court properly applied the applicable test. *See Washington*, 927 A.2d at 595-96. If the DOJ correspondence was introduced at trial, we question whether the legitimate effect of such evidence—given the entire record—would **require** or likely **compel** a different verdict. *See id.*; *Flanagan*, 7 Watts & Serg. at 424. As the PCRA court essentially observed, Appellant had motive and opportunity. *See* PCRA Ct. Op. at 8-9. Accordingly, having discerned no legal error, we affirm. *See Abu-Jamal*, 941 A.2d at 1267.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/21/2016